Donald **KENNEDY**, Plaintiff,

v.

A. B. **ENGEL**, Superintendent et al., **Defendants.**

No. 72–C–1118.

United States District Court, E. D. New York.

Sept. 27, 1972.

---

Samuel Resnicoff, New York City, for plaintiff.

Robert A. Morse, U. S. Atty., E. D. New York, for defendants by Lloyd H. Baker, Islip, N. Y., of counsel.

ZAVATT, Senior District Judge.

The plaintiff seeks to enjoin the defendants from terminating his employment as an Assistant Professor in the Department of Physical Education and Athletics of the United States Merchant Marine Academy (Academy) located at Kings Point, Long Island, New York and also seeks a declaratory judgment to the effect that the defendants, in terminating his employment, denied him "procedural due process and the equal protection of the laws."

The plaintiff's motion, pursuant to Fed.R.Civ.P. 65, for a preliminary injunction is denied.

On January 29, 1967, the plaintiff, Donald Kennedy, became an Assistant Professor in the Physical Education Department of the Academy under a two-year contract. Upon the expiration of that contract his employment was extended for a further three-year term to expire on January 28, 1972.

On February 18, 1971, after the plaintiff had completed the fourth academic year as a member of the faculty, he requested consideration for tenure. The rules governing tenure at the Academy are set forth in Administrator's Order No. 181 (June 24, 1969) of the Manual of Orders, Maritime Administration, U. S. Department of Commerce (hereinafter MARAD Order No. 181), § 6.07(3) of which provides:

"Eligibility for tenure appointment. Each faculty member serving under a limited term appointment who meets the qualification requirements may be considered for a tenure appointment after completion of the third academic year. Such faculty member must be considered for a tenure appointment after completion of five years under term appointments. A faculty member who is not recommended for a tenure appointment within the time limits specified above normally shall be separated from the service not later than the end of the fifth academic year."

On March 29, 1971, the Tenure Committee voted not to recommend the granting of a tenure appointment and, on July 27, 1971, the plaintiff was informed, in writing, by the Superintendent of the Academy (Superintendent) that he was to be separated from the Academy not later than the end of his fifth academic year of service:

"In accordance with Administrator's Order 181, Section 6.07.3, it is mandatory that you are separated not later than the end of the fifth academic year of your service.

This is to inform you that no further term appointment will be made. Your employment at the United States Merchant Marine Academy will terminate January 28, 1972."

After receiving this notice from the Superintendent, plaintiff wrote the following memorandum:

"I would like to request a six month extension to the term of my employment. January 28th is in the middle of the academic year and thus a very difficult time to find employment in the field of education.

Thank you for your past considerations and I sincerely hope that I may continue my work here at the Academy."

The Superintendent granted plaintiff's request upon the condition stated in his memorandum of August 10, 1971, consented to by the plaintiff:

"This will acknowledge receipt of your request for a six months extension of your current appointment which terminates on January 28, 1972.

In view of the lack of employment opportunities for a faculty member in the middle of the academic year, I have decided to grant your request. Your appointment will be extended until July 23, 1972.

By endorsement of attached copy of this memorandum you will stipulate that the action above will not, in any way, qualify you for tenure."

■ Following a visit to the Academy by the plaintiff's wife on or about July 12, 1972, Kennedy resigned on July 20, 1972 and was granted a temporary appointment ("Excepted Appt.") from the period beginning July 23, 1972 not to exceed September 1, 1972. Before the expiration of this "Excepted Appt." and on August 24, 1972, the plaintiff instituted this action by filing a complaint seeking a declaratory judgment that the termination of his employment violated his constitutional rights to "due process and the equal protection of the laws" and seeking a preliminary and a permanent injunction restraining the defendants from terminating his employment as of the close of business on September 1, 1972.[1] Simultaneously with the filing of the complaint, plaintiff moved, by an order to show cause signed by Judge Bartels and returnable September 7, 1972, for a preliminary injunction. Judge Bartels granted a temporary restraining order pending the hearing of said motion.

A hearing on plaintiff's motion was held before me on September 7th, during which I heard the testimony of John J. O'Grady, custodian of personnel records of the Academy, and received in evidence numerous documents submitted by the Academy, including the above-quoted memoranda and the report of the Tenure Committee. The plaintiff did not appear in person. He appeared by his counsel who called no witnesses but submitted a few documents which he deemed relevant.

At the hearing, plaintiff's counsel contended that the Tenure Committee was not constituted as required by Administrator's Order No. 116 of June 24, 1969 (MARAD Order No. 116). He argued that that order requires that the Tenure Committee include among its members the head of the Physical Education Department of which the plaintiff was a faculty member. He entirely misread or misconstrued that Order. It provides that the Committee on Tenure Appointments consist of seven members selected by the Dean from a faculty panel which includes the "Heads of academic departments" and "Members holding tenure appointments elected from the faculty within the departments in the numbers specified." MARAD Order No. 116, §§ 3.02 and 3.04. Plaintiff's counsel made much of the fact that Captain James W. Liebetz, U.S.M.S., the Athletic Director, was not a member of the Tenure Committee which met to consider plaintiff's application for tenure. There is no merit to this contention that MARAD Order No. 116 requires the head of the Department, within which the plaintiff was serving, to be a member of the Tenure Committee.

The next contention of plaintiff's counsel was that the plaintiff acquired tenure status because he was in the employ of the Academy for a period of more than five years, despite the fact that his application for tenure was denied before the expiration of his five years of employment and despite the fact that the continuation of his employment beyond January 28, 1972 (the expiration of the five year period) was at his special instance and request, after having been denied tenure prior to that time, and was conditioned upon his explicit agreement that the continuation of his employment beyond January 28, 1972 "will not, in any way, qualify you for tenure." This contention is considered, *infra*, and held to be without merit.

The next contention of plaintiff's counsel at the hearing was that the action of the Tenure Committee in 1971, when it denied his application for tenure, deprived the plaintiff of his alleged constitutional right to "due process and the equal protection of the laws." Specifically, plaintiff's counsel contended

---

1. Jurisdiction was predicated on 28 U.S.C. § 1331 (federal question jurisdiction). Plaintiff also alleged jurisdiction based upon the civil rights statutes, 28 U.S.C. §§ 1343(3) and (4) and 42 U.S.C. §§ 1981, 1983 and 1985. However, reliance upon these statutes is misplaced, since the Merchant Marine Academy is a federal institution and these statutes refer to state, not federal, action.

that the Tenure Committee could not act upon his application for tenure without affording him a due process hearing and that its ex parte consideration of and action upon his application for tenure, giving no reasons for its refusal to recommend tenure, was unconstitutional. In support of this contention, he cited two recent decisions of the Supreme Court —Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) and Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In Perry v. Sindermann, *supra*, a teacher who had become enmeshed in controversy with the Board of Regents of Odessa Junior College, a Texas State institution, was not rehired. He claimed that this action was in reprisal for his exercise of First Amendment rights. The Supreme Court held that it was irrelevant whether or not he had tenure, if his claim could be substantiated. (In contrast, it is to be noted in this case that Kennedy asserts no First Amendment claim.) Although this was Sindermann's primary allegation, he also alleged that the failure of the State Board of Regents to provide him with an opportunity for a hearing denied him procedural due process, regardless of his First Amendment claim. As to this allegation, the Supreme Court stated (408 U.S. at 599, 92 S.Ct. at 2698):

> "The respondent's lack of formal contractual or tenure security in continued employment . . . is highly relevant to his procedural due process claim. But it may not be entirely dispositive."

It was not entirely dispositive, the Court said, because the teacher alleged that his college had a *de facto* tenure program, citing the college's Faculty Guide. 408 U.S. at 600, 92 S.Ct. at 2699. In addition, said the Court, the teacher claimed "legitimate reliance" upon certain state guidelines which provided that a teacher employed for seven years has "some form of job tenure." The particular guideline

provided that "the probationary period for a faculty member shall not exceed seven years," with certain exceptions. 408 U.S. at 600, 92 S.Ct. 2699 n. 6, Generalizing, the Court stated that, even where there is no system of written contracts with explicit tenure provisions, there may, nevertheless, be implied or not-formalized agreements which may confer upon a teacher a property right akin to tenure, of which a teacher may not be deprived without procedural due process. 408 U.S. at 600–604, 92 S.Ct. at 2699–2700.

In *Roth*, *supra*, the only claims before the Court were grounded on procedural due process. The Court, however, found those claims without merit because there was no deprivation of "liberty" or "property" to trigger the due process guarantees. As to "liberty," the Court noted that, when Roth was not rehired, no charges were made against him nor were any reasons given for the termination of his employment. Thus, noted the Court, there was no "stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities" or that might damage his standing in the community and that Roth was at liberty to seek employment in any other college of the state university system. 408 U.S. 573, 92 S.Ct. 2707. In the instant case, no charges were made against the plaintiff nor were any reasons given for the termination of his employment. There was no stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.

As to "property," the Court held that a unilateral expectation of continued employment was not enough; one seeking to invoke the protection of due process must show "a legitimate claim of entitlement" to his alleged property right. 408 U.S. 577, 92 S.Ct. 2709. Only then need there be a hearing to vindicate or deny the claim. The claim need not

be ironclad; but fatuous or fanciful it may not be.[2]

The question to be determined in the instant case is whether, in being terminated as he was without a hearing or charges, plaintiff suffered a deprivation of "liberty" or "property" within the meaning of the Due Process Clause.[3] The Court holds that he did not.

In asserting the existence of a "property" right, plaintiff makes two arguments: (1) that by being retained for over five years, he has a legitimate claim of entitlement to tenure; and (2) that, by virtue of a purported conversation with the Superintendent of the Academy (in which plaintiff says the Superintendent conferred tenure upon him), he has a legitimate claim of entitlement to tenure.

In support of contention (1), plaintiff cites MARAD Order No. 181, § 6.07(3), quoted *supra*. He emphasizes the word "shall" in the sentence: "A faculty member who is not recommended for a tenure appointment within the time limits specified above normally shall be separated from the service not later than the end of the fifth academic year" and contends that, if not so separated, a faculty member thereby acquires a legitimate claim to tenure.[4]

Plaintiff points only to § 6.07(3) of MARAD Order No. 181. He ignores subsection 6.07(5):

"Faculty members serving under limited or term appointments under ap-plicable regulations prior to the effective date of this revised order will be credited with such service for consideration for a tenure appointment under provisions of Subsection 6.07.3 of this order. Service under one or more temporary appointments of one year or less shall not be counted."

The temporary appointments which Kennedy received for the period January 29 to July 23, 1972 and the period July 23 to September 1, 1972, inclusive, may not be considered for tenure purposes. Section 6.07(3) restricts consideration for tenure to "faculty member[s] serving under a limited term appointment." Such appointments, in contradistinction to temporary appointments, are for approximately two or three years:

"6.07 Appointments:

1. Types of appointment. Faculty members shall be appointed in accordance with the provisions of this order under appropriate appointments as follows:

(1) Excepted appointments for specific periods of one year or less, either on a full-time basis or on an intermittent basis. Such appointments may be referred to as 'temporary appointments.' Such appointments may be renewed if circumstances warrant. However, such reappointment does not confer upon the appointee a limited term appointment or tenure appointment.

---

2. In both *Perry* and *Roth*, a challenge was made to acts of state colleges, based upon the Due Process Clause of the Fourteenth Amendment. In the instant case a federal institution is involved and the Due Process Clause of the Fifth Amendment is at issue. Neither party in this case suggested that the scope of the Fifth Amendment is different from that of the Fourteenth as expounded in *Perry* and *Roth*, i. e., that, as to the Academy, a federal institution, a more rigorous application is required than as stated in *Perry* and *Roth*, which involved state institutions.

3. There is no question of exhaustion of remedies presented in this case, since there appear to be no nonjudicial remedies to exhaust. The employees of the Merchant Marine Academy are not subject to Civil Service regulations. The faculty are also not a part of the military. *See* H.R.Rep.No.542, 89th Cong., 1st Sess. 6–7.

4. Neither *Roth* nor *Perry* requires a teacher to demonstrate with certainty that he is entitled to tenure. All he need do is demonstrate "rules or understandings that . . . support claims of entitlement to those benefits." 408 U.S. at 577, 92 S.Ct. at 2709. Indeed, for this Court to determine in the first instance that a teacher had tenure would obviate the necessity for a hearing. *Cf.* 408 U.S. at 570 n. 7, 92 S.Ct. 2705 n. 7.

(2) Excepted appointments for specific time periods of approximately two or three years. Such appointments may be referred to as 'limited term appointments.' "

Accordingly, even if the waiver Kennedy signed in consideration for his extension was invalid, his temporary appointment had no possible applicability to his tenure claim. In light of the clear, quoted language of § 6.07, plaintiff has no legitimate claim of entitlement to tenure because of his temporary appointments beyond the five year period. Accordingly, there was no deprivation of "property" based upon his claim of tenure because he was employed beyond January 28, 1972 and his claim, on that basis, to a hearing and a statement of the reasons for his dismissal must be denied.

In support of contention (2), plaintiff alleges in paragraph 13 of his moving affidavit, sworn to August 24, 1972 that:

". . . prior to August 10, 1971, I had a conversation with defendant ENGEL, the Superintendent of the Academy, at his office wherein he advised me that by granting my extension of employment beyond five years, he was conferring tenure upon me as Assistant Professor and that any papers or documents signed by me which were intended to waive my tenure were illegal."

In that affidavit he alleges his academic education and coaching and teaching experience prior to his association of five years with the Academy:

"3. In 1959, I was graduated from St. Peter's College with a B. S. Degree in Business Management. Thereafter, and in 1961, I was graduated from Columbia University with an M. A. Degree in Physical Education. From 1959 to 1963, I was the Assistant Basketball Coach at St. Peter's College, Jersey City, New Jersey. From 1963 to 1966, I was the Head Basketball Coach at St. Joseph's High School, West New York, New Jersey. From 1961 to 1966, I was a Secondary Physical Education Teacher with the Board of Education in Hoboken, New Jersey. I am currently studying for my Doctorate in Administration of Higher Education at Fordham University."

That any such conversation took place is open to the most serious doubt in view of his education and experience, the agreement he signed on August 10, 1971, his failure to appear at the hearing or to call the Superintendent as a witness, and the provisions of MARAD Order No. 181 which delineate clearly how tenure may be conferred. Furthermore, it seems incredible that the Superintendent of the Academy would participate in a procedure which he, as claimed by the plaintiff, believed to be "illegal."

■ I find that the plaintiff has no legitimate claim to tenure and no basis for a claim of entitlement to tenure such as to entitle him to a due process hearing by the Tenure Committee.

■ As to plaintiff's claim that he has been deprived of "liberty," plaintiff is confronted by *Roth, supra,* and this Court's comments thereon. In an attempt to distinguish the instant case from *Roth,* plaintiff argues, *inter alia,* that, if the information adduced at the hearing of the Tenure Committee were disseminated, it would be tantamount to unrebutted (and possibly untrue) charges and that the resulting stigma would "[foreclose] his freedom to take advantage of other employment opportunities." *Roth, supra,* 408 U.S. 564, at 573, 92 S.Ct. 2701 at 2707. If, in fact, the unrebutted testimony adduced before the Tenure Committee (the truth of which is not being determined by this Court) were available to anyone outside the Academy—particularly potential employers—it appears that, under *Roth, supra,* plaintiff would be entitled to a due process hearing. However, it was developed at the hearing that, in fact, the information adduced at the hearing of the Tenure Committee is confidential. Reports of the Tenure Committee are kept in a special file and may be shown only to the Academy Superintendent, the

Dean and the individual concerned. In addition, MARAD Order No. 116 (June 24, 1969), establishing the Tenure Committee, provides in § 3.07:

"All deliberations and reports of the Committees shall be administratively restricted in accordance with provisions of Administrator's Order 155."

In its reply affidavit, the Government attached a copy of the Tenure Committee Report concerning the plaintiff. At the hearing, I directed and do hereby repeat the direction that that affidavit and the exhibits attached thereto, received in evidence at the hearing on plaintiff's motion, be sealed and be available subject to inspection only upon the further order of this Court. I also directed and do hereby repeat the direction that the Academy continue to keep confidential all of its records and files with reference to the plaintiff's application for tenure.

In a further effort to distinguish the instant case from *Roth, supra,* plaintiff contends that, since there was an ex parte hearing, there would have been little burden upon the Academy to conduct a due process rather than an ex parte hearing. The argument, though appealing, is foreclosed by *Roth.* There, too, plaintiff advanced the argument that his interests in a due process hearing should be weighed against the burden upon defendants in conducting such a hearing. The Supreme Court rejected this argument:

"[W]e must look not to the 'weight' but to the *nature* of the interest at stake. . . . We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." 408 U.S. at 571, 92 S.Ct. at 2706.

Under *Roth,* even if it were actually easier for the Academy to conduct a due process rather than an ex parte hearing, there would still be no obligation upon it to do so, barring a deprivation of "liberty" or "property" that triggers the due process protections.

In a final effort to distinguish the instant case from *Roth,* plaintiff argues that denial of tenure is in fact a deprivation of "liberty" although an early discharge (as in *Roth*) is not such a deprivation. No evidence was offered to substantiate this claim. *See Roth, supra,* 408 U.S. 564, at 574 n. 13, 92 S.Ct. 2701, at 2708 n. 13. From the evidence adduced at the hearing, it appears that denial of tenure was far less a mark of opprobrium than an early discharge would have been.

This opinion constitutes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

Plaintiff's motion for a preliminary injunction is denied.

This is an order.