Leonard L. Finz, J.
This is an application pursuant to CPLR article 78 declaring the actions of the respondents herein in terminating the services of the petitioner illegal, arbitrary and capricious; that the petitioner was denied due process of *701 law and that the respondents failed to follow the procedures prescribed by the by-laws of the board of education and the Education Law of the State of New York for such termination.
The attorneys for the respective parties agreed that there were no questions of fact other than those contained in the papers and the matter was submitted for decision by the court on the law and the exhibits annexed to the papers.
The petitioner, Erma Banks, was appointed a probationary teacher in ¡Community School District 29 at Junior High 'School 102 on February 8, 1972. The report on probationary service of teacher, one of the exhibits herein (designated OP 11) states ‘ ‘ probation completion date February 8,1974 ”.
It is readily apparent from the papers and exhibits submitted herein, and it is conceded, that no hearing was held prior to the dismissal of the petitioner. Petitioner claims her dismissal was illegal for several reasons, one of which cites section 105-a of the By-laws of the Board of Education which states: “ Any person in the employ of the Board of Education who was summoned to appear before the Superintendent of Schools (Chancellor) or a committee designated by him in respect of the discontinuance of service during the probationary term, or at the expiration thereof is entitled to a hearing.” (Emphasis added.) ,
The following is a history of events in this matter: On October 31, 1973 an instrument was signed by Sidney Groodman, principal of the school, a copy of which is attached to the papers and submitted herein, purporting to be a copy of the report on probationary service mentioned above, assessing the petitioner’s teaching ability. This instrument bears the statements, inter alia, that the petitioner’s services were “ unsatisfactory ” and “I recommend (x) denial of certification on completion of probation (x) denial of permanent appointment”. This form (OP 11) also contains an acknowledgment, signed by the petitioner, dated October 31, 1973, that she received a copy of this instrument. Below the afore-mentioned signatures is a statement by the Community Superintendent stating £ £ Superintendent’s Report and Recommendation (to be filled out by Community Superintendent or by Superintendent responsible for City District personnel) ”. This endorsement is dated October 31,1973 and is .signed by Max Gr. Rubinstein, Community Superintendent. No other endorsement appears thereon. However, there is another exhibit consisting of a letter dated February 5, 1974 addressed to the petitioner herein by the Community Superintendent, stating that on the form OP 11 *702 dated October 31, 1973 “ I confirmed your principal’s recommendation that you be denied certification of completion of probationary service and also be denied permanent appointment as a teacher This letter terminated the petitioner’s service as a probationary teacher as of .February 7, 1974.
On the facts therefore it would seem that section 2573 (isubd. 1, par. [a]) of the Education Law has been complied with. This section states in reference to probationary teachers: “ The service of a person appointed to any of such positions may be discontinued at any time during such probationary period, on the recommendation of the superintendent of1 .schools, by a majority vote of the board of education. Each person who is not to be recommended for appointment on tenure shall be so notified by the superintendent of schools in writing not later than sixty days immediately preceding the expiration of his probationary period ”.
Among the papers 'submitted are the minutes of the meeting of the Community .School Board with regard to this matter. These minutes indicate that on February 7,1974 the local school ■board met in executive session and had on its agenda, among other things, the following: “ (e) E. Banks J 109 — Resolution that appears on PM notice be corrected to read ‘ charges preferred against a probationary Junior High School Teacher of English ’ Mrs. Brito to read correction at public meeting this evening ’ ’. This was immediately followed by a public meeting, the minutes of which indicate the following: “ 46.73-74 unsatisfactory rating due to incompetent and inefficient service preferred against a teacher. Mrs. Brito read the resolution with the correction ‘ Community School Board 29 Queens hereby RESOLVES that .an unsatisfactory rating due to incompetent and inefficient service has been preferred against a probationary teacher of Jr. High School English on February 4, 1974 by the Principal and concurred in by the Community Superintendent ’. .Seconded by Mr. McElroy Carried unanimously ”.
Although not specifically stated, it is apparent that the Community School Board was affirming the action above taken by the superintendent pursuant to section 2573 (subd. 1, par. [a]).
¡Some reference is made in the papers to section 3019-a of the Education Law which requires a 30-day notice of termination of the services of a teacher during the probationary period. This appears to be redundant since, if there was compliance with section 2573 (subd. 1, par. [a]), the longer period therein required for notice would certainly encompass the shorter period.
*703 On April 17, 1974 a notice was sent from the City School District of New York to the petitioner advising that a hearing would be held to ‘ ‘ review the recommendation for Denial of Permanent Appointment to Mrs. Erma N. Banks, teacher of English at Jr. High School 109, Queens ”. The letter also advised that pursuant to section 105-a of the By-laws of the Board of Education she had the right to be confronted by witnesses, to call witnesses and to introduce any relevant evidence. It is conceded that the petitioner did not attend.
The exhibits 'contain a letter dated July 3, 1974 from Irving Anker, Chancellor, to the petitioner advising that he had received the report of the “ officially designated Committee of the meeting held in your absence on Monday, April 29, 1974 pursuant to the provisions of section 105-a of the By-laws of the Board of Education in connection with the recommendation for the denial of the permanent appointment as a teacher of English at Jr. High School 109, Queens, appointed February 8, 1972 ”. The letter further informed the petitioner that the Chancellor was ‘‘ approving the recommendation of your Community, Superintendent for the denial of your permanent appointment, in accordance with the provisions of section 2573(1) of the Education Law ”.
"While there is no requirement in subdivision 1 of section 2573 of the Education Law that the Chancellor approve the recommendations of the Community Superintendent, it is certainly clear that petitioner was afforded an opportunity to participate in a hearing set up to review the propriety of the discontinuance of her employment, in conformity with section 105-a of the By-laws of the Board of Education and that she chose not to avail herself thereof.
Every aspect of this matter implicitly indicates and re-enforces an intention on the part of the school authorities to terminate the services of the petitioner and that the petitioner had due notice of such intention. The only matter open in this aspect of the matter is whether the technicalities provided by statute and by the by-laws and regulations of the board of education have been complied with. It is the determination of this court that they have been. It is the further determination of this court that the action of the board was not arbitrary or capricious.
The second contention of the petitioner concerns itself with the claim of deprivation of her property rights without due process of law. ¡Several questions are raised thereby: (a) Is the license of the teacher revoked by termination during the probationary period? (b) Is the teacher ineligible for reap *704 pointment ¡without the approval of the Superintendent of Schools? (c) Is ,she deprived of the right to apply for a license hy reason of her dismissal?
Section 241 of the By-laws of the Board of Education states that a license “ shall be valid continuously, except that it shall terminate * * * (g) 'If and when the service of the licensee is terminated by discontinuance of probationary appointment or dismissal ”. Sections 250 and 251 of the said by-laws state:
“Section 250. Non-employment of Dismissed Employee. A person who has been dismissed from a position by the Board of Education, or who has resigned while charges against him were pending, shall not be eligible for re-employment under any licenses held by him at such time of severance from service; and no substitute certificate shall be issued by virtue of' licenses held by such employee.
“¡Section 251. New Candidacy of Dismissed Teacher. An application for license made by a member of the teaching and supervising staff who has been dismissed by the Board of Education, or who resigned while charges against him were pending, shall not be received or entertained by the Board of Examiners, except on the recommendation of the Superintendent of Schools approved by the Board of Education ’ ’.
An affidavit by one Rufus ¡Shorter, Deputy Executive Director of the Office of Personnel of the Board of Education of the City of New York, among the papers submitted by the respondents, indicates that it is no longer the policy or the practice of the board of education to terminate a teacher’s license when his or her probationary service is discontinued. This conforms with the decision of the Commissioner of Education in the Matter of Baronat (11 Ed. Dept. Rep. 150) which held section 241(g) of the by-laws to be invalid. It would appear further that sections 250 and 251 of the by-laws apply only to tenured teachers.
In considering the question of the substantive rights of the petitioner herein, it is apparent that, absent any regulation by statute or otherwise, the services of a probationary teacher may be terminated without a hearing at the discretion of the appropriate school authorities or merely by allowing the probationary period to expire. (Matter of Albury v. New York Civ. Serv. Comm., 32 A D 2d 895; Matter of Pinto v. Wynstra, 22 A D 2d 914.)
In the latter case it was stated (p. 915): “ It has been established that, under that statute and similar statutes (Education Law, §§ 3012, 3018), the services of a probationary teacher may *705 be -discontinued without a hearing and without the giving of reasons therefor [cases cited].”
It is only through the adoption of section 105-a of the Bylaws of the Board of Education that a probationary teacher is afforded a hearing. Section 2578 of the Education Law merely requires that the teacher be given the requisite notice that tenure will he denied and that such action be confirmed iby the school hoard. In substance, it would appear that al-1 of the requirements of law pertaining to this situation have been met.
'Central to the question of whether the petitioner had been deprived of her rights without due process of law are the two decisions on the subject issuing out of the United States Supreme Court, to wit, Board of Regents v. Roth (408 U. S. 564) and Perry v. Sinderman (408 U. S. 593). It was the ruling of the Roth decision that such due process applies only for the protection of liberty and property covered by the Fourteenth Amendment of the Constitution. Conceding that there may be instances where an employee’s interest in employment would be insufficient to warrant a hearing, the court intended that there might be circumstances under which a refusal to re-employ a person may involve the property interest of such penson. The court found, however, in this case involving a nontenured professor -on a one-year contract, that declining to re-employ him did not impose any “ stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities ” (p. 573).
In the case of Russell v. Hodges (470 F. 2d 212, 216), the court upheld the dismissal of probationary employees citing again Regents v. Roth (supra), and Perry v. Sinderman (supra): “As we -understand these opinions, an employee seeking to show, absent any claim of First Amendment violations, that his termination was a deprivation of liberty ’ must demonstrate that the government had made a charge ‘ that might seriously damage Ms standing and associations in his community ’ or had imposed ‘ a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.’ 408 U. iS. at 578 * * * The Court made clear that by the latter phrase it meant something more than the disadvantage which inevitably entailed when a person ‘ simply is not rehired in one job but remains as free as before to seek another. ’ 408 U. S. at 575 * * * ‘ Mere proof, for example, that his record of nonretention in -one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind or foreclosure of opportunities amounting to *706 a deprivation of‘f liberty’ 408 TI. S. at 574 n. 13 (Emphasis added.)'
There is a plethora of eases involving the dismissal of probationary or provisional employees, almoist all of them supported by the rulings of Roth and Sinderman. In Kennedy v. Engel (348 F. Supp. 1142, 1146), wherein the court, after proper obeisance to the rulings in these two landmark cases, decided that the plaintiff in the Kennedy case did not have such property right in tenure “ of which a teacher may not ibe deprived without procedural due process ”. In Lipp v. Board of Educ. of City of Chicago (470 F. 2d 802, 804) the court stated: “ This argument * * * ignores the fact that the due process clause imposes its procedural safeguards only to protect certain vital individual interests — life, liberty and property. 1 [T] o determine ¡whether due process requirements apply in the first place * * * [w]e must look to see if the interest is ¡within the Fourteenth Amendment’s protection of liberty and property. ’ Board of Regents v. Roth, 408 U. S. 564, 570-571, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972). Unless a plaintiff alleges facts to show' that he is demanding procedural safeguards to protect an interest recognized by the fourteenth amendment, the procedural protections will never come into play. ’ ’
Bringing the matter closer to home, the court in a case discontinuing a petitioner’s service as a junior high school teacher before the end of his probationary period stated: “Nothing that occurred prior to that discontinuance of his service, and nothing in section 105-a of the By-Lawis of the Board of Education, served to enlarge appellant’s rights or to restrict the board’s authority in respect of discretionary dismissal. ’ ’ (Matter of Butler v. Allen, 29 A D 2d 799, 800.)
Perhaps the closest parallel to the instant case appears in Matter of Brown v. Board of Educ. of City of N. Y. (42 A D 2d 702), wherein a probationary teacher, engaged for a three-year period, was discontinued prior to the termination of her probationary period. ¡Subsequent to the date of termination .of her 'service's a hearing was held pursuant to section 105-a of the By-laws of the Board of Education. The court held that the petitioner had been deprived of a substantial right because the notice sent to her pursuant to the by-laws failed to advise her that .she could call ¡witnesses and be confronted by witnesses and introduce any relevant evidence. All of these matters were included in the notice of hearing sent to this petitioner. The decision in Brown further held .(P- 703): “we hold that a fulliscale plenary hearing with representation by independent coun *707 sel may not be had concerning the propriety of a determination that a probationary teacher’s services were discontinued because her services were found to be unsatisfactory [cases cited].”
In the instant matter, the meeting of which the petitioner had been given notice, held .subsequent to the termination of her employment, would seem to comply with the requirements set forth in Brown.
There has been no showing of any stigma or other disability which would bar the petitioner from other employment. Thus it would appear that petitioner, in her position as probationary teacher, had not acquired such property right in ¡her position as would mandate a hearing on the merits prior to the discontinuance of her employment at the end of her probationary period or that the manner of the discontinuance of her employment was not in conformity with applicable law.