**Evelyn J. JOHNSON, Appellant,**

v.

**S. A. FRALEY Jr., et al., Appellees.**

**No. 71–1590.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1971.

Decided Nov. 20, 1972.

Michael L. Soffin, Richmond, Va. (A. C. Epps and Christian, Barton, Parker, Epps & Brent, Richmond, Va., on brief), for appellant.

Brantley B. Griffith, Lebanon, Va., and Robert T. Winston, Jr., Norton, Va., (Griffith, Bondurant & Owens, Lebanon, Va., and Greear, Bowen, Mullins & Winston, Norton, Va., on brief), for appellees.

Before BOREMAN and BRYAN, Senior Circuit Judges, and BUTZNER, Circuit Judge.

ALBERT V. BRYAN, Senior Circuit Judge:

Suing under the Civil Rights Act, 42 U.S.C. § 1983,[1] as tooled by 28 U.S.C. § 1343, Evelyn J. Johnson asked for injunctive and indemnifying relief against the School Board and Superintendent of Schools of Russell County, Virginia, for refusal to reemploy her as a teacher, despite her continuous service of 29 years. The point of her complaint is that the defendants, authorized by the State to operate the schools, took this action without first informing her of the rea-

---

1. § 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other per-

son within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

sons for it and without granting her an opportunity to meet them. This grievance is braced by allegations that the manner of disemployment clashed with the Board's own regulation as well as State law. She condemns the procedure as odious to 14th Amendment due process.

The District Court, 327 F.Supp. 471, found that, as is conceded, she was employed only on a one-year basis, without stipulation for tenure. It also found that "[t]he only federally protected right plaintiff claims to be violated by the defendants is 'substantive . . . and pretermination procedural due process,' in other words, protection against discharge except for cause and an administrative hearing prior to termination of employment. The plaintiff disavows the violation of any other federally protected right by the defendants". In this shape of things, the Court concluded, in agreement with the defendants' argument, there was no denial of any right, privilege or immunity within the ken of the Civil Rights Act and "no colorable federal claim". Hence, the complaint was dismissed "without prejudice, for want of [Federal] jurisdiction", leaving no room for pendent adjudication on the protests under State law and local regulations. The plaintiff appeals.

We reverse on the authority of Supreme Court pronouncements delivered subsequent to the consideration by the District Court: Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).[2]

The setting in which the cause came to the District Court was this. Appellant's career as a teacher in the Russell County Schools extended without break from 1942 until April 13, 1970, when she received a letter from the Superintendent stating that she would not be retained for the 1970–71 session. During her teaching years there was in effect a School Board regulation stipulating that:

"In the event a teacher is not to be given a contract for the succeeding school year, the superintendent or his designated representative must notify the teacher in writing not later than March 15, stating the reasons for his decision. The superintendent shall arrange with any such teacher who desires it a hearing with him and school personnel who have observed the teacher's work. If the teacher is then dissatisfied with the decision of the superintendent, full and free opportunity shall be granted for an appeal to the school board."

This regulation, the school officials asserted, was superseded by a 1968 Act of the Virginia legislature establishing a uniform and exclusive procedure for the engagement of teachers. Va.Code Ann. § 22–217.1 (Repl.Vol.1969). It prescribed that written notice of nonrenewal of a teacher's contract must be given on or before April fifteenth. of each year. Id. § 22–217.4. As the equivalent of "tenure", the designation of "continuing contract" was used. To achieve that status the teacher must serve a probationary term of three years.

Because at the time of her termination, 1970, appellant had not, and could not, have served the three-year trial period fixed by the 1968 Act, it was assumed that she had not then attained a "continuing contract". The statute was amended in 1969 to allow, "in the discretion of the local school board", service prior to 1969 to satisfy the probationary term. This option was never exercised in favor of any teacher. Upon completion of probation, teachers would become entitled to continuing contracts "during good behavior and competent service". Id. § 22–217.4. The 1968 enactment also carried the following provisions:

"§ 22–217.5. Dismissal of teacher or placing on probation; grounds.— Teachers may be dismissed or placed on probation for the following rea-

2. After argument we postponed decision to await the Court's rulings in these two cases.

sons; Incompetency, immorality, noncompliance with school laws and regulations, disability as shown by competent medical evidence, or for other good and just cause.

"§ 22–217.6 Same; notice to teacher.—Written notice setting forth the reasons for dismissal or placing on probation and a statement that the teacher may request a hearing before the school board within fifteen days after receiving the notice must be sent to the teacher. A personal interview with the teacher stating the reason for dismissal or placing on probation may be employed in lieu of such written notice.

"§ 22–217.7. Same; hearing.—The hearing before the school board, which shall be private unless the teacher requests a public one, must be set within thirty days of the request, and the teacher must be given at least fifteen days' written notice of the time and place. At the hearing the teacher may appear with or without counsel and be heard, presenting testimony of witnesses and other evidence.

"§ 22–217.8. Same; decision of school board.—The school board shall give the teacher its written decision within five days after the hearing, together with a copy of the transcript of the proceedings, which shall be furnished without cost. A majority vote of the school board is necessary for dismissal."

These four sections, appellees argue, do not apply to nonrenewals but solely to dismissals, emphasizing that Evelyn Johnson was not dismissed. Furthermore, they argue, these provisions cover continuing contract teachers alone.

Appellant pleaded she had rendered "faithful and competent service". This allegation the school authorities traversed. She denounced the school officials' action as irreparably damaging her professional reputation and thereby crippling her ability to earn a livelihood, since teaching was her only occupation.

We do not resolve these disputes, reciting them only to depict the environment of appellant's resort to the 14th Amendment. This restraint seems peculiarly fitting since the trial court reached decision exclusively upon the absence of a Federal question. However, we do look to the existence of these controversies to see if they tendered problems demanding consideration of the Amendment in their solution, and thus established a Federal case.

■■ In this canvass, we find *Sindermann* and *Roth,* supra, both declaring that injury to professional reputation or livelihood caused by an abrupt termination of an engagement of substantial longevity warrants an inquiry upon whether the means pursued satisfied constitutional due process. These decisions avouch that continuous employment over a significant period of time —such as appellant's 29 years—can amount to the equivalent of tenure. When it does, dissolution of the relationship requires prior "notice and an opportunity to be heard", or else due process is wanting. Hence, because of her long school connection and the failure of the Board and Superintendent, acting as State representatives, to accord appellant due process, Evelyn Johnson's charges could rise to 14th Amendment magnitude.

In Board of Regents v. Roth, supra, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), a professor was appointed to the faculty of a State university on the express understanding that his employment would commence September 1, 1968 and end June 30, 1969. Upon completion of his term the professor was duly notified he would not be rehired for the next academic year. Admittedly without tenure status, he sued in the Federal District Court charging that the determination not to retain him for the following year "infringed his 14th Amendment rights". Particularly, he charged that the failure of the University to inform him of the reasons for this action and to afford him a chance to be

heard thereon abrogated his right to procedural due process of law.

The Supreme Court ruled that under these facts the professor had no constitutional right to what he sought. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits", said the Court. Although, it continued, in the instant circumstances "the [professor] surely had an abstract concern in being rehired, . . . he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment". Id. at 578, 92 S.Ct. at 2710.

Nevertheless, the Court impliedly recognized that, even without tenure, if the nonrenewal could "seriously damage his [the professor's] standing and associations in his community." Id. at 573, 92 S.Ct. at 2707, his due process claims would be sound. "For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' In such a case, due process would accord an opportunity to refute the charge before University officials." Id. at 573, 92 S.Ct. at 2707 (citations omitted). That is precisely the appellant teacher's assertion in respect to the school officials' refusal to renew her engagement of 29 years.

In Perry v. Sindermann, supra, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), a professor had been employed in a State college system for 10 successive years under annual contracts. Without explanation or hearing, the Regents voted not to renew his contract. In a suit, rested on the 14th Amendment, the professor attributed the Regents' action to his public criticism of the college administration, thus constituting an intrusion upon his right to freedom of speech. Additionally, he asserted that the failure to give an opportunity for a hearing "violated the Fourteenth Amendment's guarantee of procedural due process". Id. at 595, 92 S.Ct. at 2696.

"The first question presented", said the Supreme Court, "is whether the [professor's] lack of a *contractual* or tenure right to re-employment, taken alone, defeats his claim that the nonrenewal of his contract violated the First and Fourteenth Amendments. We hold that it does not." Id. (accent added). Again:

"A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient 'cause' is shown. Yet absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a 'property' interest in re-employment. For example, the law of contracts in most, if not all, jurisdictions long has employed a process by which agreements, though not formalized in writing, may be 'implied'." Id. at 601, 92 S.Ct. at 2699 (citation omitted).

Further:

"A teacher, like the [professor], who has held his position for a number of years, might be able to show from the circumstances of this service —and from other relevant facts—that he has a legitimate claim . . . to job tenure. Just as this Court has found there to be a 'common law of a particular industry or of a particular plant' that may supplement a collective-bargaining agreement, so there may be an unwritten 'common law' in a particular university that certain employees shall have the equivalent of tenure." Id. (citation omitted).

The case was remanded to give the professor an opportunity to prove his entitlement to continued employment.

These authoritative enunciations confirm Evelyn Johnson's protests of 14th Amendment deprivations as securely pleaded.

■ In summary, we do not decide whether the school authorities did or did

not have a right, power or cause not to rehire appellant Johnson. We hold only that she stated a cause of action on the 14th Amendment's Due Process Clause [3]. The judgment of dismissal will be vacated and the case remanded for trial on the complaint.

Vacated and remanded.

BOREMAN, Senior Circuit Judge (concurring specially as to result):

As I read the majority opinion, my brothers would remand this case for trial, with opportunity to the appellant school teacher to present evidence showing that she has been unconstitutionally deprived of her rights on either, or both, of two separate and distinct theories: (1) that she may have been deprived of a "property" interest in re-employment, which interest might arise from her twenty-nine years of continuous employment and from other facts and circumstances which would amount to the "equivalent of tenure"; (2) that she may have been deprived of a "liberty" interest in re-employment which interest might arise from interference with her freedom to obtain other employment by reason of damage to her professional reputation due to the failure to renew her contract. The majority relies on Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). As I can agree with the first, but not the second, basis of the remand, I feel compelled to state separately my concurrence and the rationale of my disagreement.

In Board of Regents v. Roth, *supra*, 408 U.S. at 569, 92 S.Ct. at 2705, the Supreme Court noted that, "The requirements of procedural due process apply only to the deprivation of interests encompassed within the Fourteenth Amendment's protection of liberty and property." The Court then proceeded to analyze the Fourteenth Amendment's protection of "liberty" and "property," and to discuss the application of each concept with respect to a nontenured teacher whose contract is not renewed.

## I. PROPERTY

In *Roth*, the Court stated:

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." 408 U.S. at 576, 92 S.Ct. at 2708.

. . . . . .

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. *He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.*" (Emphasis supplied.) 408 U.S. at 577, 92 S.Ct. 2709.

The Court noted that "property interests" are not created by the Constitution, but, "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law —rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. at 577, 92 S.Ct. at 2709. The teacher there involved, David Roth, had been appointed to the faculty of Wisconsin State University with the express understanding that his employment would begin September 1, 1968, and end June 30, 1969. Since Wisconsin law and the terms of Roth's appointment would support no claim of entitlement to re-employment, the Court concluded that he had shown no constitutionally protected "property" interest in being rehired, and thus was not entitled to procedural due process upon the decision not to renew his contract.

The Court had occasion to apply the principles set forth in *Roth* in Perry v.

---

3. For a comprehensive discussion of this subject, *vide* "Non-Tenured Teachers and Due Process: The Right to a Hearing and Statement of Reasons, 29 Wash. and Lee L.Rev. 100 (1972).

Sindermann, *supra*, 408 U.S. 593, 92 S. Ct. 2694, 33 L.Ed.2d 570. The teacher, Robert Sindermann, had taught in the state college system of Texas for ten successive years under annual contracts. The Board of Regents of the junior college where Sindermann taught voted not to offer him a contract for the next academic year. Sindermann brought suit in the district court alleging, *inter alia*, that the failure to provide him an opportunity for a hearing violated due process. The district court granted summary judgment against Sindermann. The court of appeals reversed, holding that despite Sindermann's lack of tenure, the failure to allow him an opportunity for a hearing would violate due process if he could show that he had an "expectancy" of re-employment. The court of appeals ordered exploration of this factual issue upon remand. Sindermann v. Perry, 430 F.2d 939 (5 Cir. 1970). The Supreme Court affirmed the result reached by the Fifth Circuit, but, apparently, did not wholly agree with its opinion. The Court held that a mere subjective "expectancy" is *not* a property interest and thus is not protected by procedural due process. However, the Court noted that Sindermann had alleged that his interest in continued employment, though not secured by a formal contractual tenure provision, was secured by a no less binding understanding fostered by the college administration. Sindermann had claimed that the college had a *de facto* tenure program and that he had tenure under that program; also, that he and others had relied upon provisions of the college's Faculty Guide and upon guidelines promulgated by the Coordinating Board of the Texas College and University System, all of which might tend to show some form of job tenure. The Court stated, "Thus [Sindermann] offered to prove that a teacher, with his long period of service, at this particular

State College had no less a 'property' interest in continued employment than a formally tenured teacher at other colleges, and had no less a procedural due process right to a statement of reasons and a hearing before college officials upon their decision not to retain him." 408 U.S. at 601, 92 S.Ct. at 2699.

In *Sindermann* the Court concluded that, "[A]bsence of . . . an explicit contractual [tenure] provision may not always foreclose the possibility that a teacher has a 'property' interest in re-employment," 408 U.S. at 601, 92 S.Ct. at 2699, and ordered that Sindermann be given a chance to show that "the policies and practices of the institution" were as he had alleged. The Court again noted that property interests are created by state law and warned, "If it is the law of Texas that a teacher in [Sindermann's] position has no contractual or other claim to job tenure, [his] claim would be defeated." 408 U.S. at 602, n. 7, 92 S.Ct. at 2700.

Referring to both *Sindermann* and *Roth*, my brothers state, "These decisions avouch that continuous employment over a significant period of time —such as appellant's 29 years—can amount to the equivalent of tenure." If my brothers intend by their statement to say that those opinions positively assert this conclusion I would be inclined to disagree, but the Court's opinions might be so interpreted as to provide some support for it. The teacher's allegations in the instant case seem to me to be sufficient to show the possible existence, in light of all the circumstances,[1] of the "equivalent of tenure." Therefore, I join in remanding to the district court.

## II.  LIBERTY

My brothers state, "[W]e find *Sindermann* and *Roth*, *supra*, both declaring

---

1. The school board's regulation (perhaps even if superseded by state statute), and the teacher's allegation (not mentioned in the majority opinion) that, "By their remarks to plaintiff and her friends, defendants induced her to believe that

. . . she would receive some type of teaching position for the 1970–71 school year," might provide additional support for her argument that she had an implied contract amounting, under Virginia law, to *de facto* tenure.

that injury to professional reputation or livelihood caused by an abrupt termination of an engagement of substantial longevity warrants an inquiry upon whether the means pursued satisfied constitutional due process." I cannot agree. I find nothing in *Sindermann* which can be so interpreted. And, as I read *Roth*, the Supreme Court did not so *declare*. Rather the court of appeals in *Roth* had so held, but the Supreme Court neither affirmed nor expressly disapproved this holding. The Court did, however, strongly indicate that a mere failure to renew a nontenured teacher's contract, *standing alone*, would not suffice to raise a constitutional question.

The Court said in *Roth* that it had not attempted to define "liberty" with exactness, but that some of the "included things" have been definitely stated, and, "There might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated." 408 U.S. at 573, 92 S.Ct. at 2707. Two examples were given:

(1) Where a person's " 'good name, reputation, honor or integrity,' " 408 U. S. at 573, 92 S.Ct. at 2707, is at stake. But the Court concluded that on the facts in *Roth* there was no suggestion that the teacher's interest in his good name, reputation, honor or integrity was involved since the State, in declining to rehire him, made no charges against him (such as dishonesty or immorality) which might damage his standing in his community; and,

(2) Where the State, in declining to re-employ a teacher, "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." 408 U.S. at 573, 92 S.Ct. at 2707. The State had imposed no "stigma" on Roth, however, nor had it imposed on him any "other disability" since, "The State, for example, did not invoke any regulations to bar [him] from all other public employ-

ment in State universities." 408 U.S. at 573, 92 S.Ct. at 2707.

The Court discussed the *assumption* by the district court in *Roth* that nonretention *alone* would create " 'concrete and practical difficulties for a professor in his subsequent academic career,' " 408 U.S. at 574, n. 13, 92 S.Ct. at 2707, and the *argument* of the court of appeals that, " '[T]he substantial adverse effect non-retention is likely to have upon the career interests of an individual professor' amounts to a limitation on future employment opportunities sufficient to invoke procedural due process guaranties." *Id.* The Court stated:

"[E]ven assuming *arguendo* that such a 'substantial adverse effect' under these circumstances would constitute a state imposed restriction on liberty, the record contains no support for these assumptions. There is no suggestion of how nonretention might affect [Roth's] future employment prospects. *Mere proof, for example, that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty'.*" 408 U.S. at 574, n. 13, 92 S.Ct. at 2708. (Emphasis supplied.)

The conclusion to me seems clear. To sufficiently state a constitutional claim of denial of "liberty," a nontenured teacher whose contract has not been renewed must plead either that his "good name, reputation, honor or integrity" has been damaged by, in addition to the nonrenewal, the assignment of reasons for the nonrenewal, or he must plead that the State has imposed on him some "stigma" or "other disability," in addition to the nonrenewal, which foreclosed his freedom to take advantage of other employment opportunities. The teacher in the instant case has alleged nothing which might harm her reputation or which might interfere with her ability to get another job except the nonrenewal

itself.[2] Thus, in my view, she has not made out a constitutional claim in this respect.

In Chitwood v. Feaster, 468 F.2d 359 (4 Cir. 1972), this court had before it the appeal of several nontenured teachers whose contracts were not renewed by Fairmont State College in West Virginia. The teachers asserted, *inter alia*, that they should have been given notice of nonrenewal, a statement of reasons and an administrative hearing before the decision not to renew became final. The district court had granted summary judgment against the teachers. In their brief to this court the teachers asserted that:

> "[T]he complaint provided that as a result of defendants' actions, plaintiffs had been subject to public ridicule and scorn, suffered injury to their professional reputations, had been 'deprived of employment, had lost their earning capacity, had incurred expenses, and had suffered emotional stress and . . . pain and suffering.'"

Despite these allegations in the teachers' complaint, this court (opinion by Chief Judge Haynsworth) stated:

> "The [procedural due process] contention has been *foreclosed* by a subsequent decision of the Supreme Court in Board of Regents v. Roth . . . . These teachers were not tenured and there was no basis for any reasonable expectancy of permanent employment. While the college might have dealt with them more frankly, under *Roth*, they had no constitutional right to a statement of reasons for the failure to renew their contracts or to an opportunity for an administrative hearing." (Emphasis supplied.) Chitwood v. Feaster, *supra*, 468 F.2d 359, 360.

In so holding, this court did not deem it necessary to even mention the teachers' allegations of injury to their professional reputations.

To the extent that the participating judges of this court in Chitwood v. Feaster were of the view that the teachers had not successfully raised a procedural due process issue, the opinion there might be interpreted as conflicting with the view of my brothers in the instant case and their interpretation of the Supreme Court's holding in *Roth*.

2. The teacher's complaint stated:

10. Plaintiff has been unemployed for the 1970–71 school year, and the County School Board's failure to renew her contract under the circumstances above set forth after 29 years of faithful and competent service accepted by said Board, irreparably has damaged her professional reputation and irreparably has impaired her ability to earn a livelihood, since teaching is the only occupation in which she has substantial experience.