Daniel W. WILLIAMS, Appellant,

v.

The HYDE COUNTY BOARD OF EDU-CATION, a public body corporate of Hyde County, North Carolina and Richard O. Singletary, Superintendent of the Hyde County Board of Education Public Schools, Appellees.

No. 73–1863.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1973.

Decided Jan. 28, 1974.

Charles L. Becton, Charlotte (J. LeVonne Chambers, Chambers, Stein, Ferguson & Lanning, Charlotte, on brief), for appellant.

Edward N. Rodman, Washington, N. C. (Rodman, Rodman & Archie, Washington, N. C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and FIELD, Circuit Judge.

PER CURIAM:

Summary judgment went for the School Board in this action by a nontenured high school teacher whose contract was not renewed for the 1971–72 school year. He is a black male, and he alleged that the nonrenewal of his contract was because of his race. He further claims that he was entitled to an adversary hearing before the School Board on the Board's decision of whether or not his contract should be renewed.

On appeal, he contends there was a material issue of fact stemming from his claim that his race was, at least, one of the motivating reasons for his release. He founds his claim upon his bare assertion that his race was the reason for his release, his testimony that he had been told by the school superintendent that the superintendent would get rid of him because of his involvement with the black teachers association and because of his claim that the adverse information accumulated in his personnel file was false and a pretext for his termination.

The depositions of most of the potential witnesses were taken. Though summary judgment was entered, it is apparent on the record now what much of the testimony would be if there were a trial on the merits. There are disputes about some of the adverse information in the file. He was tardy in the submission of certain reports, for instance, and he and the school principal are diametrically in disagreement as to whether or not he had the prior permission of the principal to be late. There are, however, uncontroverted facts which negate the substance of the plaintiff's claim.

On this record it is uncontroverted that at the end of the preceding school year, in the late spring of 1971, the black principal of his school recommended that the plaintiff's contract be not renewed. Nevertheless, the School Board did renew his contract, but it wrote him a special letter stating that his re-employment was conditioned upon his elevating his performance in certain designated areas. The letter was a clear warning of probationary status.

The plaintiff began the next school year, 1970–71, by not showing up. When he did come in, he explained that he had not received the letter informing him of the date of the school opening, but the letter had not been received by him because he was not at his regular address to receive it and he had made no inquiry about the school opening date.

Later in the year, in the presence of his class, he applied a cane to the backside of nine of his pupils, two of whom were girls. The school principal promptly investigated the incident. The plaintiff denies that he lifted the skirts of the girls when administering corporal punishment to them, and he denies that the pupils told the principal that he was lying when he denied that he had lifted the skirts of the girls, but there is no denial of all of the other essential facts of the incident.

The spanking incident was investigated by the Advisory Council to the School Board. The Council is biracial and the investigators were three white adults and two black adults. At the conclusion of their investigation, they sent a letter to the plaintiff reprimanding him for what he had done.

In the Spring of 1971, the Advisory Council recommended to the School Board that it not renew the plaintiff's contract. Two of the four members of the Council who made the recommendation were white and two were black. The testimony in the record shows that such recommendations from the Advisory Council carry great weight with the School Board and usually are routinely accepted.

We need not pause to state the deficiencies suggested by the Council members, for to some extent, at least, they are denied by the plaintiff. The Council receives reports from pupils and parents, and others, and is charged with a duty of teacher appraisal.

■ This is not a case of the discharge of a black teacher by an all-white school board. Nor is it one of a series of discharges of black school teachers, for this is the only black teacher leaving the school system in recent years, except by the teacher's own volition. The initial recommendation that the plaintiff should not be retained as a teacher came from a black principal, and the effective Council recommendation in 1971 came from a group in which blacks were equal participants with whites. Moreover, as stated above, there is enough uncontroverted record of deficiencies on the plaintiff's part to foreclose his claim that the stated reasons for his release were pretexts.

Under the circumstances, we are left simply with the plaintiff's bare assertion that he was discharged because of his race, which he can support only by his claim that the superintendent told him he would be let go because of his association with the black teachers association. The superintendent denied making any such statement, of course, and the other uncontroverted facts make it simply unbelievable. Other members of the black teachers association were not being discharged or threatened with being discharged, and when the recommendations that the plaintiff be not retained were coming from his black principal and the biracial Advisory Council, the plaintiff's claim that his discharge was procured by his superintendent because of the plaintiff's association with the black teachers association is simply incredible.

This court has had cases in which there was an appearance of discrimination against black teachers. In those cases we have not hesitated to give them judicial protection. North Carolina Teachers Association v. Asheboro City Board of Education (4 Cir., en banc) 393 F.2d 736; Chambers v. Hendersonville City Board of Education (4 Cir., en banc) 364 F.2d 189. This, however, is not such a case.

Since there was no credible issue of material fact, we conclude that the District Court properly entered summary judgment for the School Board.

■ After receipt of the recommendation of the Advisory Council, the School Board notified the plaintiff and gave him an opportunity to appear. He appeared, but declined to make any meaningful statement because he contended he was entitled to an adversary hearing. He contends here that he was entitled to such a hearing. We think not, for he did not have tenure, nor any "equivalent of tenure," Johnson v. Fraley (4 Cir.) 470 F.2d 179, 181. When challenged in this action, the School Board has come forward with reasons for what it did, but at the public hearing to which the plaintiff was invited, there were no accusations against him. He was not discharged, and the letter informing him that his contract would not be renewed contains no derogatory information about him. What derogatory information there is in his personnel file is confidential and not available to prospective employers.

Under these circumstances the plaintiff is not entitled to a full due process hearing before the School Board. Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548; Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570.

Affirmed.