**Steven MOORE, Plaintiff,**

v.

**Robert KIBBEE, Chancellor of the Board of Higher Education of the City of New York, Individually and in his official capacity, et al., Defendants.**

**No. 74 C 1011.**

United States District Court,
E. D. New York.

Sept. 17, 1974.

---

Evelyn Williams, New York City, for plaintiff.

Adrian P. Burke, Corp. Counsel, by Donald Nussbaum, New York City, for defendants.

PLATT, District Judge.

Plaintiff seeks a preliminary injunction against the defendants mandating them to re-hire him for a three year term as a counsellor in the Community Scholar Program and as assistant to the Higher Education Officer in the Higher Education Office at Staten Island Community College.

In his complaint plaintiff alleges that jurisdiction is conferred by 42 United States Code § 1983, 28 United States Code § 1343 subdivisions 3 and 4; the Education Law of the State of New York, Article 126, § 6304, subdivision 1(a)(iv), McKinney's Consol.Laws, c. 16 and Title VII of the Civil Rights Act of 1964, and as amended, effective March 24, 1972. Plaintiff also alleges that the actions of the defendants have deprived him of his constitutional rights to equal protection and to due process guaranteed under the Fourteenth Amendment of the United States Constitution.

## FACTS

In October of 1971 plaintiff was hired to the above specified positions by the defendant Dr. James Wooten who was and still is Director of the Community Scholar Program at the Staten Island Community College.

Plaintiff admits that his contract with the defendants was oral and was based on the fiscal year expiring June 30, 1972. Plaintiff was re-hired prior to June 30, 1972 for the ensuing fiscal year and again in June of 1973 for the fiscal year ending June 30, 1974.

Plaintiff's duties and responsibilities were concededly extensive and varied. During the first fiscal year for example, he counselled only 150 students whereas during the fiscal year ended June 30, 1974 he counselled approximately 650 students.

Plaintiff's job performance apparently was satisfactory from October 1971 until the fall of 1973. Thereafter there seems to be considerable dispute with respect to the facts, plaintiff claiming that his performance continued to be satisfactory whereas the defendant Wooten wrote two reports dated December 12, 1973 and February 26, 1974, wherein he rated the plaintiff's performance as "unsatisfactory".

In early March 1974, plaintiff was advised by the defendant Wooten that he would not recommend plaintiff's reappointment. Various discussions then took place between the plaintiff, the defendant Wooten, and other members of the faculty and staff of the college which, according to the plaintiff, culminated in a memorandum written by the defendant Wooten to Dean Cardegna dated April 4, 1974 in which the defendant Wooten stated "I wish to rescind my recommendation of non-reappointment (see memo dated March 5, 1974) and I now urge his reappointment".

Notwithstanding this change in position by his immediate superior, plaintiff on April 24, 1974 received a letter from Arthur Kaufman, Vice President of the college, advising plaintiff his reappointment had not been approved and that his employment would terminate on June 30, 1974.

Plaintiff appealed this decision to the Higher Education Screening Committee, which committee was then composed of eight white and two black members. After a hearing and on May 29, 1974 the Chairman of the Committee advised the plaintiff that the Committee had voted not to sustain his appeal.

Plaintiff then received non-reappointment letters from the aforesaid Arthur Kaufman and from the defendant Dr. William Birenbaum, President of the College; the latter letter being dated June 28, 1974.

At no time has the plaintiff been given a reason for the college's refusal to reappoint him.

In the meanwhile, and on May 21, 1974, plaintiff presented his grievance to the Affirmative Action Advisory Board which on June 5, 1974 advised that it had "found sufficient evidence to support an affirmative action grievance in this case in that the College Affirmative Action Plan had not been adhered to with respect to the supervisor's responsibility for implementation of the Plan, there had been a failure to provide proper job descriptions, and a failure to provide certain in-service training for upward mobility and there had been sick leave discrimination.

This finding, together with the Higher Education Screening Committee decision, was presented to and apparently considered by the defendant President Birenbaum before he denied on June 28 plaintiff's appeal for reappointment made on June 26. The text of the defendant Birenbaum's letter is significant:

"After careful reflection, I cannot sustain your appeal for reappointment which I heard on June 26th.

"The Affirmative Action Committee report in your case, advisory to the President, while questioning certain administrative relationships between you and your Director, fails in my opinion either to establish that your Director has acted improperly and/or that there is any connection between his conduct and an affirmative action cause.

"The College HEO Committee considered your case before the Affirmative

Action Report was issued, and at my request, once again after that report had issued and with full access to it. In my decision I am affirming their recommendation on both occasions.

"My decision in this case in no manner prejudices your future relations with the College. Should you seek alternative employment here, you stand de novo, in the same position as any other applicant for such employment."

Both sides concede that plaintiff was not a tenured employee. Plaintiff alleges that the sole basis for his non-reappointment was because of his race (black) and that his election to the Black Caucus, a Staten Island Community College organization consisting of students, staff and faculty, was a contributing factor.

In addition to pointing out that the defendant Dr. James Wooten is black and that the Higher Education Screening Committee which voted not to sustain plaintiff's appeal was composed of two black and eight white members, defendants submitted an affidavit setting forth that there were 33 blacks reappointed to the full-time professional staff and that of these three blacks achieved tenure according to University policy and that there were also five additional blacks on staff who had achieved tenure previously.

## DISCUSSION

It is well established law that a plaintiff seeking a preliminary injunction assumes "the burden of demonstrating either a combination of probable success and the possibility of irreparable injury" or that it has "raised serious questions going to the merits and that the balance of hardships tipped sharply in [its] favor". Stark v. New York Stock Exchange, 466 F.2d 743 (2nd Cir., 1972).

Preliminary injunctive relief requires more than a "mere showing that the party seeking relief will see its relative position deteriorate." Sanders v. Airline Pilots Association, Interna-

tional, 473 F.2d 244, 248 (2nd Cir., 1972). Plaintiff in this action has limited his claim of irreparable harm to the fact that he will be unemployed. But there has been no showing that he is unable to secure other employment in the field of education counseling. Such a claim lacks sufficient merit in view of the fact that an adequate remedy is available if plaintiff succeeds in his action. See Tichon v. Harder, 308 F.Supp. 839 (D.C.1970), aff'd, 438 F.2d 1396 (2nd Cir., 1971), where at 842 the District Court stated:

"Moreover, if the plaintiff should prevail at trial she will be adequately recompensed and protected by an order reinstating her with back pay."

See also Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), Kennedy v. Engel, 348 F.Supp. 1142 (E.D.N.Y.1972).

If plaintiff ultimately prevails herein there is no question but that he will not only be rehired but also that he will be fully recompensed for whatever pay he may have lost in the interim, and awarded whatever other damages he may establish and be entitled to under the law. Whatever injury he may sustain would therefore appear not to be "irreparable" as that term is generally understood in this type of action.

In addition to showing that irreparable harm would flow from the denial of an injunction, "the movant must show a substantial likelihood of success on the merits." McGuire Shaft & Tunnel Corp. v. Local Union No. 1791, U.M.W., 475 F.2d 1209 (Em.App., 1973), cert. denied, 412 U.S. 958, 93 S.Ct. 3008, 37 L.Ed.2d 1009 (1973).

In Board of Regents v. Roth, 408 U.S. 564, 570–571, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), the United States Supreme Court stated in a case involving a similar employment grievance:

"To determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the 'nature' of the interest at stake. See Morrissey v. Brewer, 408 U.S.

471, at 481, 92 S.Ct. 2593, at 2600, 33 L.Ed.2d 484. We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property."

One of the questions to be determined in the instant case is whether, in not being re-hired, plaintiff suffered a deprivation of "liberty" or "property" within the meaning of the Due Process Clause.

■ As to "liberty", the Supreme Court noted in Board of Regents v. Roth, *supra,* when Roth was not rehired, no charges were made against him nor were any reasons given for the termination of his employment. Thus, noted the Court, there was no "stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities" or that might damage his standing in the community and that Roth was at liberty to seek employment in any other college of the state university system. (408 U.S. at 573, 92 S.Ct. at 2707.) In the instant case, no charges were made against the plaintiff nor were any reasons given for the failure to rehire. There was no stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.

■ As to "property", the *Roth* Court held that a unilateral expectation of continued employment was not enough; one seeking to involve the protection of due process must show "a legitimate claim of entitlement" to his alleged property right. 408 U.S. 577, 92 S.Ct. 2709. Despite the lack of formal tenure or contract, a property interest could stem from an expectancy of continued public employment arising from less formalistic rules and understandings which have been officially promulgated and fostered. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). However, no property interest in continued employment exists in this case. Plaintiff was not tenured. Plaintiff at no time received any official communication concerning future employment. Further, movant failed to display any evidence of less formalistic rules and understandings by the school administration indicating that renewal of contracts for the tenure year would automatically flow from prior reappointments.

■ Furthermore, plaintiff contends that the Court must enjoin the respondents as plaintiff's non-reappointment was racially motivated and therefore discriminatory in violation of the Civil Rights Act of 1964, 42 United States Code, Section 1983, and the Fourteenth Amendment to the Constitution of the United States. It is certainly the law that teachers and other professional staff members of a school district may not be discriminatorily hired, assigned, dismissed, or demoted because of race or color. Quality Ed. for All Children v. School Bd. of School Dist. No. 205 of Winnebago Co., 362 F.Supp. 985 (N.D. Ill. 1973). However, a complaint in a case under § 1983 must set forth in detail facts showing some intentional and purposeful deprivation of constitutional rights. Powell v. Workmen's Compensation, 327 F.2d 131 (2nd Cir., 1964). Bare allegations of racial discrimination will be found inadequate, as in Williams v. Hyde Co. Bd. of Ed., 490 F.2d 1231 (4th Cir., 1974). Apart from plaintiff's own conclusory protestations, the evidence in his own papers shows that there were other likely causes for the action taken by the university authorities in not rehiring him. At best therefore plaintiff's own papers show there are one or more issues of fact to be determined at a plenary trial. Further, these same conclusory statements fall far below the heavy burden which plaintiff must meet to obtain a preliminary injunction, i. e., "a substantial likelihood of success on the merits." McGuire Shaft & Tunnel Corp. v. Local Union No. 1791 U.M.W., *supra,* 475 F.2d at 1216.

In *Williams, supra,* a nontenured high school teacher brought action against the school board and alleged that the non-renewal of his contract was due to racial discrimination. The facts demonstrated, however, that the school principal, who

initially recommended non-retention, was also black, that blacks participated with whites on the advisory council which recommended non-renewal, and that other members of the black teachers association at the school were not being discharged or threatened with being discharged. The instant case poses many striking similarities to Williams v. Hyde County Board of Education, *supra*.

Plaintiff admits that in December 1973 and February 1974 he received two "unsatisfactory" ratings from his immediate superior, defendant Wooten, who was also black. Concededly Wooten changed his initial conclusion from a recommendation not to rehire to one to rehire but he apparently did not change his ratings nor the record on which they were based. With at least such ratings and the facts in such record (if not more) the authorities concluded that plaintiff should not be rehired. This decision was reviewed first by a Screening Committee (of eight white and two black persons) and was affirmed.

Again while a grievance was filed and sufficient evidence was found to sustain a grievance as to certain aspects in plaintiff's record by the Affirmative Action Advisory Board, it does not appear that such Board concluded that the decision not to rehire was racially motivated nor does it appear that the defendants presented their proof with respect to the four facts allegedly supporting the affirmative action grievance. While the latter may well not be the fact (plaintiff's papers are not clear on this point), nonetheless the plaintiff made a further appeal to the President who reviewed both the Screening Committee's decision and the Advisory Board's decision along with plaintiff's entire record and reached the ultimate decision not to reappoint.

It may well be as plaintiff argues that racial bias underlay the Screening Committee's and the officials' decision herein, but the fact remains there is little, if any, independent proof beyond plaintiff's bald assertions to support his contentions. In the Court's opinion this does not meet the heavy burden placed upon a plaintiff seeking a preliminary injunction. McGuire Shaft & Tunnel Corp. v. Local Union No. 1791 U.M.W., *supra*, Stark v. New York Stock Exchange, 466 F.2d 743 (2nd Cir., 1972). At best it merely raises one or more issues of fact to be tried at a plenary trial.

In addition, consideration of the recent opinion of the Second Circuit Court of Appeals in Faro v. New York University, 502 F.2d 1229 decided August 23, 1974, exposes the problems of federal court involvement in a case such as this:

"Of all fields, which the federal courts should hesitate to invade and take over, education and faculty appointments at a University level are probably the least suited for federal court supervision. Dr. Faro would remove any subjective judgments by her faculty colleagues in the decision-making process by having the courts examine 'the university's recruitment, compensation, promotion and termination and by analyzing the way these procedures are applied to the claimant personally' . . . This argument might well lend itself to a *reductio ad absurdum* rebuttal. Such a procedure, in effect, would require a faculty committee charged with recommending or withholding advancements or tenure appointments to subject itself to a court inquiry at the behest of unsuccessful and disgruntled candidates as to why the unsuccessful was not as well qualified as the successful." Id. at 1231.

After considering the law and the facts, this Court remains thoroughly unconvinced that the defendant was motivated by racial bias or discrimination in refusing to rehire plaintiff to a staff position and since the plaintiff has failed to show either irreparable harm or the likelihood of success on the merits, no preliminary injunction should issue.

Further, an application of the second test indicated above which was approved by the Court of Appeals in Gulf & Western Industries, Inc. v. Great Atlantic &

Pacific Tea Co., 476 F.2d 687 (2nd Cir., 1973), and more recently in Faro v. N. Y. University, *supra,* fails to persuade this court that an injunction should issue. Under such test, "the burden [of showing probable success] is less where the balance of hardships tips decidedly toward the party requesting the temporary relief." Dino DeLaurentiis Cinematografica, S.p.A. v. D–150, Inc., 366 F.2d 373, 375 (2nd Cir., 1966). In such a case, the moving party may obtain a preliminary injunction if he has raised questions going to the merits so serious, substantial, and difficult as to make them a fair ground for litigation and thus for more deliberate investigation. Unicorn Management Corp. v. Koppers Company, Inc., 366 F.2d 199, 205 (2nd Cir., 1966); Dino DeLaurentiis Cinematografica, S.p.A. v. Den 150, Inc., *supra;* Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2nd Cir., 1953); Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co., *supra,* 476 F.2d at 689. See Faro v. N. Y. University, *supra.*

The questions presented in this case, however, are not so "substantial and difficult" to warrant the application of this second test. Moreover, upon considering a balancing of the equities—in terms of injury to the plaintiff if an injunction were denied, as against injury to the defendants if it were granted—the Court fails to find that such a balancing would tip sharply or decidedly in favor of the plaintiff particularly in view of the fact that the requisite probability of success standard has not been met by plaintiff.

This Court, therefore, feels constrained to deny plaintiff's motion for a preliminary injunction on condition that the defendants' counsel cooperate fully with plaintiff's counsel to complete all pretrial discovery as expeditiously as possible so that plaintiff may obtain an early trial in the event he wishes the same.

Supervision of the expeditious pre-trial discovery is hereby assigned to Magistrate Catoggio who will keep the Court advised as to the progress thereof and report on the conclusion thereof when the parties have prepared and agreed upon a pre-trial order and the case is ready for trial.

So ordered.