563 F.2d 137
 Mattie FULLER, Bessie Harley and Beatrice Sullivan, Appellees,
v.
LAURENS COUNTY SCHOOL DISTRICT NO. 56, a body politic, and
corporate, Dr. C. L. Cummins, Jr., Administrative
Superintendent of Laurens County School District 56, and H.
L. Shealy, Principal, Clinton Elementary School, both
individually and officially, Dr. W. Fred Chapman, Jr.,
Calvin A. Cooper, S. C. Blackmon, J. R. Swetenberg, Jr.,
John Adair, John E. (Billie) Willingham, and Dr. R. M.
Fuller, each individually and as members of the Board of
Trustees of Laurens County School District 56, all jointly
and severally and the successors in the offices of each, Appellants.
 Nos. 76-1317, 76-1318.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 7, 1977.
Decided Oct. 14, 1977.
 
 J. D. Todd, Jr., Michael J. Giese, Greenville, S.C. (Leatherwood, Walker, Todd & Mann, Greenville, S.C., Thomas A. Babb, Babb & Babb, Laurens, S.C., on brief), for appellants in 76-1317 and for appellees in 76-1318.
 Jerry D. Anker, Washington, D.C. (Robert E. Nagle, Wald, Harkrader & Ross, David Rubin, Washington, D.C., T. Travis Medlock, Craig K. Davis, Medlock & Davis, Columbia, S.C., on brief), for appellees in 76-1317 and for appellants in 76-1318.
 Before BRYAN, Senior Circuit Judge, and BUTZNER and HALL, Circuit Judges.
 ALBERT V. BRYAN, Senior Circuit Judge:
 
 
 1
 Under the Civil Rights Act, 42 U.S.C. § 1983,[1] on September 12, 1973, in the District Court, Mattie Fuller, Beatrice Sullivan and Bessie Harley, black elementary school teachers with 23, 12 and 11 years of service respectively, sued their employer, the Laurens County School District No. 56 of South Carolina, and also the administrative superintendent of the schools, the principal of Clinton Elementary School and the board of trustees of the school district, both in their official capacities and personally.
 
 
 2
 They charged that in March 1972 they had been terminated in their positions without a hearing and thus were denied constitutional due process, concluding also that their severances were racially motivated. Equitable relief and damages were prayed. Defendants answered that the plaintiffs had been given adequate opportunity for a hearing, but that they had declined the offer, thus waiving their rights to a hearing; they responded, too, that race was not a consideration in their termination.
 
 
 3
 On February 10, 1975 the District Court, after appropriate hearings, sustained the plaintiffs' accusations of denial of due process. In relief it directed reinstatement of the teachers for the school term of 1975-76, "unless within 30 days from the date hereof, this date, if the plaintiffs so request, a due process hearing to be held by the school board, which comports with the legal requirements of such a hearing, and as a result of such hearing the school board finds sufficient reasons not to reinstate or re-employ the plaintiffs."
 
 
 4
 The board granted the plaintiffs full hearings on March 3 and 4, 1975, found them to be suffering from the same deficiencies as existed originally and held them not qualified for reemployment. Their earlier terminations were confirmed. Later, in January 1976, the Court allowed monetary damages of $67,863.65, the aggregate of the salaries calculated from the date of the initial terminations until the hearing was granted, but disallowed attorney's fees.
 
 
 5
 Defendant school authorities appeal the award of damages; plaintiffs appeal the denial of attorney's fees. We reverse the judgment for the plaintiffs, thus rendering moot the issue of attorney's fees.
 
 
 6
 Schools in Laurens County School District No. 56 were desegregated in 1970-71 in a plan approved by the U.S. Department of Health, Education and Welfare. Previously, plaintiffs had taught in all-black schools. The three were transferred to Clinton Elementary for the 1970-71 year. In April 1971 each received a contract for the following regular school term accompanied by a letter from the then superintendent stating that the contracts were issued with the understanding that their performance would improve. Shortcomings cited included lack of classroom control, problems in communicating with students, and poor teaching techniques. However, they were retained for that summer session.
 
 
 7
 In January 1972, the Clinton principal alerted Harley, Sullivan and Fuller to their continuing failings, and by letters dated March 15, 1972 notified each of them, in substantially the same wording, that he would not recommend them for reemployment:
 
 
 8
 "This is to inform you that I am not recommending you for reemployment as a teacher for the 1972-73 school session. I am listing below reasons why I have taken this action.
 
 
 9
 1. You were given a conditional contract for the 1971-72 school session. This agreement required that your performance show marked improvement during this year. In my opinion there has been no significant improvement.
 
 
 10
 2. The quality of instruction has not been satisfactory. Teaching methods and techniques have not been successful in motivating students' learning activities.
 
 
 11
 3. There has been a lack of class control. Children have not been properly disciplined. As a result there has been too much disruptive noise and movement around the classroom without a purpose. All of this has created a classroom atmosphere not conducive to learning.
 
 
 12
 4. Rapport with students has not been satisfactory. Generally, you have not been able to earn and hold the respect and confidence of your pupils.
 
 
 13
 "I regret that I cannot conscientiously recommend you for reployment (sic)."
 
 
 14
 In March 21, 1972 letters the superintendent informed the teachers that their contracts would not be renewed. He further stated that if they desired to appear before the board to contest this decision, they must request a hearing in writing, addressed to him and received by him not later than April 1, 1972.
 
 
 15
 Plaintiffs responded in like letters of March 31, 1972, received by the superintendent April 3, saying:
 
 
 16
 "In answer to your letter of March 21, stating that I was not recommended nor reemployed for the school year 1972-73, I feel that it would not be beneficial to me at this time to request a hearing before the Board of Trustees."After having taught in the Clinton Public School System for twenty-three years, I am asking for an opportunity to attend summer school and take courses recommended by Mr. Shealy in the area of my deficiencies and be reemployed." (Fuller's letter.)
 
 
 17
 The superintendent informally reviewed their responses with several board members and replied April 13, 1972 in this manner:
 
 
 18
 "I have received your response to my letter of March 21, 1972.
 
 
 19
 "I am currently proceeding to fill the vacancies that we have in each of our schools for 1972-73. I cannot give you encouragement as to the possibility that you might be reemployed.
 
 
 20
 "Since you chose not to appeal the decision that you not be reemployed for 1972-73, I am proceeding to fill the position in which you now serve."
 
 
 21
 On April 15, 1972 plaintiffs wrote the superintendent asking for a hearing before the board:
 
 
 22
 "I would like to appear before the Board of Trustees to present information as to why I should be reemployed and have the deficiencies removed from my record."
 
 
 23
 The board met and after considering the March 31 and April 15 letters denied the hearing.
 
 Hearing Waived
 
 24
 Assuming that plaintiffs were constitutionally entitled to pretermination hearings, a review of the record is persuasive that plaintiffs voluntarily and after deliberation waived this right by declining the proffered invitation to appear before the board. In his March 21 letter, the superintendent instructed plaintiffs quite explicitly on the method of procuring a hearing. Before replying they consulted legal counsel as well as a friend experienced in school matters, a former principal, and with their advice plaintiffs chose not to take advantage of the offer.
 
 
 25
 Satterfield v. Edenton-Chowan Board of Education, 530 F.2d 567, 572 (4 Cir. 1975) defined due process in analogous circumstances in this manner:
 
 
 26
 "As has been often said, '(t)he fundamental requirement of due process "is the opportunity to be heard, 'at a meaningful time and in a meaningful manner,' " ' (citation omitted) and, when this opportunity is granted a complainant, who chooses not to exercise it, that complainant cannot later plead a denial of procedural due process. (citation omitted)"
 
 
 27
 Certainly this prescription was fulfilled here.
 
 
 28
 The trial judge felt that the teachers were not too dilatory and could withdraw their waiver because the board did not meet before or immediately after the passage of the deadline of April 1 or prior to receipt of the letter of retraction. This inaction, however, and the continuing force of the board's determination were explained in the superintendent's letter that he was "currently proceeding to fill the vacancies" in all of the schools. This obviously meant that negotiations with other prospects were afoot, although plaintiffs' places had not then been filled. Certainly he could not be expected to disregard and discard pending applications for, and proffers of, positions in his system, simply because the plaintiffs had changed their minds. Furthermore, their letters of declination acknowledged their inadequacies, in that, they asked "an opportunity to attend summer school and take courses . . . in the area of my deficiencies and be reemployed". The superintendent had no assurance they would subsequently qualify and hardly could be expected to defer substitute appointments awaiting completion of their intended courses.
 
 
 29
 There was nothing intemperate or precipitate in the school authorities' actions. As we have seen, on April 7, 1971 a year previous to their termination they were admonished concerning their incompetencies. Nevertheless, they were allowed to teach in the summer session of 1971 and, indeed, even forwarded contracts engaging them for the regular term of 1971-72. Further, the school principal again specifically enumerated their faults in his March, 1972 letters telling them he could not recommend their retention. Moreover, all hint of race motivation in their releases is banished by the employment of blacks in their stead. Indeed, the District Judge found no ground for any such imputation.
 
 No Hearing Required
 
 30
 So far we have assumed, because the plaintiffs have posited their case on it, their right to a hearing before renewal of their employment could be refused, but actually due process did not demand it. They were probationers; clearly they did not have tenure. After their first year of service, 1970-71, in the Clinton School, they were cautioned that their deficiencies precisely listed must be corrected and their 1971-72 award of contracts was conditioned on such improvement. In Williams v. Hyde County Board of Education, 490 F.2d 1231-1233 (4 Cir. 1974), sustaining summary dismissal of the claim of denial of due process, where the school board refused to renew a non-tenured teacher's contract, it was said:
 
 
 31
 "On this record it is uncontroverted that at the end of the preceding school year, in the late spring of 1971, the black principal of his school recommended that the plaintiff's contract be not renewed. Nevertheless, the School Board did renew his contract, but it wrote him a special letter stating that his re-employment was conditioned upon his elevating his performance in certain designated areas. The letter was a clear warning of probationary status."
 
 
 32
 "Under these circumstances the plaintiff is not entitled to a full due process hearing before the School Board. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570."
 
 
 33
 Nor presently does either Roth or Sindermann command a due process hearing. As in the former, no plaintiff was a "permanent" employee. The State law there and here were alike, in that the South Carolina statute, Code Ann. Section 21-288 (as then in force, but since modified) stipulated that a teacher could not be employed for more than a single year at one time. The Court in Roth declared that in not being rehired the teacher had not been deprived of Fourteenth Amendment "property" or "liberty".
 
 It summed its decision as follows:
 
 34
 "The only question presented to us at this stage in the case is whether the respondent had a constitutional right to a statement of reasons and a hearing on the University's decision not to rehire him for another year. We hold that he did not." 408 U.S. at p. 569, 92 S.Ct. at p. 2705.
 
 
 35
 In regard to "liberty", however, the opinion construed a stigma on "the good name, reputation, honor or integrity" of the employee in the process of non-renewing to amount to an infringement of liberty. It is on this point that plaintiffs now urge that a due process hearing was demandable. The stigma alleged is the mention, in a letter of the school principal to one of the plaintiffs, that an additional ground for his unfavorable recommendation of her was that on three occasions she had given checks to the school which were not honored by the bank, because of insufficient funds. However, this fact was not disclosed publicly by the school authorities; it was first revealed publicly by her in the complaint in this case. Under Bishop v. Wood, 426 U.S. 341, 346, 96 S.Ct. 2074, 48 L.Ed.2d 684 (June 1976) a private communication of this nature "cannot properly form the basis for a claim" of impairment of character.
 
 
 36
 Finally, there is not sufficient proof of a school policy here entitling the plaintiffs to a non-renewal hearing, such as is contemplated in Sindermann, 408 U.S. 593, at 603, 92 S.Ct. 2694, 33 L.Ed.2d 570, to confer that right.
 
 
 37
 The decision on appeal will be reversed with final judgment.
 
 
 38
 Reversed with Final Judgment.
 
 BUTZNER, Circuit Judge, dissenting:
 
 39
 Because I believe that the district judge properly resolved the due process issues raised by this case, I respectfully dissent.
 
 
 40
 The teachers were entitled to a due process hearing for two reasons. First, the district judge found that there was a policy in the defendant school district of granting a hearing to every teacher whose contract was not renewed. This finding is supported by the evidence and is binding on us. Fed.R.Civ.P. 52(a). Indeed, it was on the basis of this well-established policy that the superintendent offered the teachers a hearing in the first place. In Thomas v. Ward, 529 F.2d 916 (4th Cir. 1975), which also involved termination of a teacher's employment, we held that "explicit contractual provisions may be supplemented by other agreements implied from the promisor's words and conduct in light of the surrounding circumstances." 529 F.2d at 919. Therefore, the district judge properly concluded that the school district's policy created a legitimate claim of entitlement in the teachers to a hearing when their contracts were not renewed.
 
 
 41
 Second, regardless of school district policy, our decision in Johnson v. Fraley, 470 F.2d 179 (4th Cir. 1972), illustrates the necessity for hearings in this case. In Johnson we held on the authority of Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), that a teacher whose contract was not renewed after 29 years of continuous service on a series of one year contracts was entitled to a due process hearing. "These decisions (Roth and Sindermann ) avouch that continuous employment over a significant period of time such as appellant's 29 years can amount to the equivalent of tenure. When it does, dissolution of the relationship requires prior 'notice and an opportunity to be heard,' or else due process is wanting." 470 F.2d at 181. In contrast to Williams v. Hyde County Board of Education, 490 F.2d 1231 (4th Cir. 1974), on which the school officials rely, the instant case, involving teachers with 11, 12, and 23 years of service, is indistinguishable in principle from Johnson.
 
 
 42
 I also believe that the district judge properly ruled that the teachers did not waive their right to hearing. In their letters of March 31, 1972, the teachers said that hearings would not be beneficial to them at that time and offered to attend summer school to improve their skills and thereby eliminate the need for non-renewal of their contracts. When the superintendent rejected this alternative to non-renewal on April 13, the teachers promptly wrote him to ask for hearings. The district judge found that no prejudice resulted from this short delay, most of which was attributable to the superintendent. On the basis of this evidence, the judge found that the teachers did not knowingly and intentionally waive their due process right to hearings. Again, familiar rules of appellate practice require us to accept these findings. See Fed.R.Civ.P. 52(a). He then applied the proper evidentiary standard: a waiver of a constitutional right must be an "intentional relinquishment or abandonment of a known right or privilege" and courts "indulge every reasonable presumption against waiver." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).
 
 
 43
 While the teachers are not entitled to reinstatement, because the school district did eventually provide them with a proper hearing, our cases clearly require that they recover net back pay for the period from the date of their premature termination to the date on which they received their due process hearing. Horton v. Orange County Board of Education, 464 F.2d 536, 538 (4th Cir. 1972); Thomas v. Ward, 529 F.2d 916, 920 (4th Cir. 1975). The district court scrupulously followed these decisions, and its judgment should not be disturbed.
 
 
 
 [1]
 "Every person who, under color of statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."