Lyell J. THOMAS, Appellant,

v.

Marvin WARD, Superintendent of Winston-Salem/Forsyth County Schools, et al., Appellees.

No. 74–1541.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1974.

Decided Nov. 24, 1975.

Joel D. Gewirtz, Washington, D. C. (Jerry D. Anker, Robert E. Nagle, Lichtman, Abeles, Anker & Nagle, Washington, D. C., William G. Pfefferkorn, Clyde C. Randolph, Jr., Randolph & Randolph, Winston-Salem, N.C., on brief), for appellant.

John L. W. Garrou, Winston-Salem, N.C. (W. F. Womble and Womble, Carlyle, Sandridge & Rice, Winston-Salem, N.C., on brief), for appellees.

Before HAYNSWORTH, Chief judge, and BUTZNER and FIELD, Circuit Judges.

HAYNSWORTH, Chief Judge:

Lyell J. Thomas, a former school teacher in the Winston-Salem/Forsythe County, North Carolina School System, appeals from an order of the district court denying him reinstatement, back pay and an award of attorney's fees. We reverse that part of the order which refused to award back pay.

Mr. Thomas was employed from 1965 to 1971 as a mathematics teacher at North Forsythe Senior High School, Winston-Salem, N.C. On May 11, 1971 the school principal, Mr. Julian Gibson, recommended to the Superintendent of Schools that Thomas be terminated at the end of the academic year. His rec-

ommendation was based on reports of administrators who had visited Mr. Thomas' classes and expressed the opinion that, while Thomas was a hard worker with a good academic background, he was deficient in maintaining discipline and in communicating with students. The Superintendent thereafter notified Mr. Thomas that the Board of Education would consider his contract on June 1, 1971. Thomas was invited to attend and be heard.

At the meeting Mr. Thomas testified and presented other witnesses whose testimony tended to show that he was a competent and effective teacher. The school administration presented no witnesses but submitted letters of school officials, Thomas' personnel file, and affidavits of several students and of the assistant principal, which tended to show ineffectiveness. On this record the Board concluded that Thomas should be terminated.

Thomas subsequently filed suit in the district court, naming as defendants the Superintendent and Assistant Superintendent of the County Public Schools, the principal of his school and the members of the Board of Education, all in their individual and official capacities. He alleged discrimination based on race and age, both of which were ultimately abandoned, and that he was deprived of his liberty and property without due process. Thomas contended that his year-to-year contract together with the school system's "Handbook for Professional Personnel" gave him a property interest in his position.

According to the Handbook:

It is the policy of the Winston-Salem/Forsythe County Schools to employ new personnel on a 'temporary or probationary status' for their first three years.

Elsewhere in the Handbook it is stated:

Beginning with the 1967–68 school year, teachers in North Carolina are employed on a continuing contract basis. This means that once a teacher has signed a contract, she is employed until the teacher resigns or is dismissed . . . . . Cases of dismissal are rare and result from *incompetence* or from *immoral* or disreputable conduct. [Emphasis in original].

The district court held that Mr. Thomas was deprived of his interest in this "*de facto tenure*" without due process. The court observed that witnesses had not been sworn and that the school system relied solely on unsworn letters and affidavits. Thomas consequently was unable to confront and cross-examine those who presented opinions critical of his performance. Moreover, several of the students whose affidavits were unfavorable had discipline problems of their own, a fact of which the Board was unaware. Thus, cross-examination might have been crucial. Finally, the court held that the Board's reliance on the administrative staff's evaluation, appearing in the unsworn letters, did not constitute substantial evidence to justify termination in the face of Thomas' live, contrary evidence. The Board was ordered to hold a second hearing.

The defendants did not appeal from that order. Rather, a new hearing was held at which Thomas was again terminated but this time in compliance with due process. Accordingly, when he returned to the district court, his complaint was dismissed because the second hearing was constitutionally adequate and because the Board's decision was not arbitrary or capricious. The court also held that an award of back pay or attorneys fees was barred as against the defendants in their individual capacity by the officials' good faith, see *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), and as against them in their official capacity by *City of Kenosha v. Burno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Thomas has appealed the dismissal as to the officials only in their representative capacity, claiming that he was nevertheless entitled to reinstatement, back pay, and attorneys fees. The defendants, notwithstanding their failure to appeal the first order, now seek to argue that Thomas

was deprived of no property interest protected by the Fourteenth Amendment and that, in any event, the first hearing met due process standards.

## I.

■ We agree with the district court that Mr. Thomas had a protected property interest in continued employment. The Supreme Court, in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) made it clear that a teacher's property interests are not limited to formal tenure or contract rights. Thus, explicit contractual provisions may be supplemented by other agreements implied from the promisor's words and conduct in light of the surrounding circumstances. And, a teacher who has held his position for a number of years might be able to show that he has a legitimate claim of entitlement to job tenure. Such is the case before us, for, through its Handbook, the School Board fostered an understanding that after a temporary or probationary status for their first three years, teachers would be employed on a continuing contract basis, subject only to dismissal for cause. Mr. Thomas was clearly no longer a probationary employee, having been employed under this policy for five years, and thus had a legitimate claim of entitlement to continued employment that could not be taken without due process. *See Zimmerer v. Spencer,* 485 F.2d 176 (5th Cir. 1973); *Johnson v. Fraley,* 470 F.2d 179 (4th Cir. 1972).

## II.

The district court also properly held that the first hearing before the Board did not meet due process standards. It is by now a truism that due process is a flexible concept, the very nature of which negates any concept of inflexible procedures universally applicable to every imaginable situation. *E. g. Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). And, while the right to confront and cross-examine live witnesses does not necessarily attach to every administrative hearing, *see Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in the circumstances of this case we conclude that Thomas could not constitutionally be terminated without such an opportunity.

■ The school administration's "case" against Mr. Thomas depended upon a list of several itemized shortcomings alleged to demonstrate his incompetence. Thus, for example, it was said that he spoke too softly, that he allowed students to waste time, that he was an ineffective disciplinarian, and that his room was subject to excessive vandalism. Moreover, these allegations were dependent for their proof in no small part upon the unfavorable affidavits of a half dozen students, some of whom, unknown to the Board, were discipline problems themselves. These affidavits not only criticized Mr. Thomas' ability to communicate but also related specific instances of his failure to take prompt disciplinary action. It cannot be doubted, therefore, nor does the Board seriously contend otherwise, that the termination decision turned on the truth or falsity of disputed facts.[1] As this court has noted, in almost every such setting due process requires an opportunity to confront and cross-examine adverse witnesses. *McNeill v. Butz,* 480 F.2d 314, 321 (4th Cir. 1973); *Goldberg v. Kelly,* 397 U.S. 254, 269–70, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

■ The Board, however, does complain of the administrative burden that would result from a requirement that it provide a full hearing to each teacher it discharges. Such considerations are

---

1. It is significant that the defendants have conceded that Mr. Thomas is hardworking and intelligent with an excellent grasp of his subject. Accordingly, this is not the sort of case in which a decision to terminate is based on wholly subjective professional judgments about a teacher's intellectual and psychological qualifications.

properly the subject of concern, of course, but they cannot always outweigh the employee's interest in having an effective opportunity to challenge damning evidence and in preserving his job and reputation. *McNeill v. Butz,* 480 F.2d at 322–23. Moreover, we note that North Carolina law, effective July 1, 1972, expressly provides that career teachers (those with more than three consecutive years in one district) may be dismissed or demoted only in accordance with procedures clearly more elaborate than those provided in this case and which include the right of cross-examination in some circumstances. NCGS § 115–142 (1974 Cum.Supp.). In light of such a legislative judgment we are unable to conclude that Mr. Thomas' interest in disputing the accusations made against him is outweighed by the Board's interest in administrative efficiency.

### III.

As to Thomas' claim that he is entitled to reinstatement and back pay, we adhere to our decision in *Horton v. Orange County Board of Education,* 464 F.2d 536 (4th Cir. 1972). The plaintiff in that case, who had been discharged for alleged insubordination, brought a § 1983 action claiming that the termination deprived her of liberty and property without due process. The district court held that the discharge was procedurally deficient but refused to grant relief because it found that the severance was amply warranted by the plaintiff's conduct during her tenure. This court affirmed the denial of reinstatement because a new hearing before the school board would have been demonstrably futile in light of the facts found by the district court. Nevertheless, since the deficient hearing before the school board was to be treated as a nullity, Ms. Horton was entitled to recover her "net pecuniary loss by reason of the premature termination, computed for the period between the date she was disemployed and the date

of the decision." 464 F.2d at 538; *see also Burt v. Board of Trustees,* 521 F.2d 1201 (4th Cir. 1975); *McNeill v. Butz,* 480 F.2d 314, 326 (4th Cir. 1973).

Similarly, as a result of the Board's second hearing, Mr. Thomas is no longer entitled to reinstatement; indeed, it would be entirely inappropriate to reinstate him pending yet another hearing, as he requests. Nevertheless, we agree that the district court erred in refusing to award back pay from the date of his improper termination to the time of his full hearing before the Board. Such an award is an integral part of the equitable remedy of reinstatement, *Burt v. Board of Trustees,* 521 F.2d 1201 (4th Cir. 1975); *Robinson v. Lorillard Corporation,* 444 F.2d 791, 802 (4th Cir. 1971); *Smith v. Hampton Training School,* 360 F.2d 577, 581 n. 8 (4th Cir. 1966), to which Thomas was technically entitled prior to the second hearing. *See also Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Soni v. Board of Trustees,* 513 F.2d 347 (6th Cir. 1975); *McNeill v. Butz,* 480 F.2d 314, 326 (4th Cir. 1973).

The defendants respond, however, that the court is powerless to enter such a decree because insofar as they are sued in their official capacity they are not "persons" within the meaning of § 1983, the predicate for jurisdiction under 28 U.S.C. § 1343. *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). *See generally,* 87 Harv.L.Rev. 252, 258–61 (1973). By analogy to cases decided under the Eleventh Amendment, e. g., *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), they argue that this suit is, in substance, an action against the school board, because it is against them as representatives of the school board. Since the school board is not a "person," [2] *Singleton v. Vance*

---

**2.** A divided panel so held in *Singleton,* but there appears to be a conflict among the circuits (compare *Forman v. Community Serv-* *ices, Inc.,* 500 F.2d 1246 (2d Cir. 1974) and *Aurora Educ. Ass'n East v. Board of Educ.,* 490 F.2d 431 (7th Cir. 1973), with *Adkins v.*

County Board of Education, 501 F.2d 429 (4th Cir. 1974), they continue, the action must be dismissed for lack of jurisdiction.

We recently canvassed this entire field in Burt v. Board of Trustees, 521 F.2d 1201 (4th Cir. 1975). It was there held that the members of the Board of Trustees are "persons" within the meaning of § 1983 and that, sued in that capacity, they have no sovereign immunity. The decision in Burt forecloses the defendants' jurisdictional challenge.

IV.

■ Thomas asserts finally that the district court erred in denying his request for reasonable attorney's fees. It is not suggested that the defendants proceeded in bad faith or that Congress has specifically provided for attorney's fees in cases such as this. Rather, counsel argues that if fees are not recoverable, potential plaintiffs are likely to be discouraged from bringing actions to vindicate constitutional rights, which actions benefit the public. This is, of course, the "private attorney general" theory recently rejected by the Supreme Court and by this Court en banc. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); McCrary v. Runyon, 515 F.2d 1082 (4th Cir. 1975).

Reversed in part; affirmed in part; and remanded.

Duval County School Bd., 511 F.2d 690 (5th Cir. 1974) and the question is apparently open in the Supreme Court. See Mayor v. Educa-tional Equality League, 415 U.S. 605, 612 n. 11, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974).