# BOARD OF EDUCATION OF CHARLES COUNTY *v.*
# MARGARET R. CRAWFORD

[No. 31, September Term, 1978.]

*Decided January 5, 1979.*

246

*Edward S. Digges, Jr.,* and *Susan Gillette,* with whom was *Edward S. Digges, Sr.,* on the brief, for appellant.

*Susan W. Russell,* with whom were *Walter S. Levin* and *Sauerwein, Boyd & Decker* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold that the Maryland State Board of Education (the State Board) erred when it awarded back pay to respondent, Margaret R. Crawford (Mrs. Crawford), on the theory of a wrongful dismissal which it regarded as a breach of contract. The only constitutional deprivation suffered by Mrs. Crawford was procedural in nature since the State Board found that she was in fact incompetent. The State Board relied in part upon *Thomas v. Ward,* 529 F. 2d 916 (4th Cir. 1975), and *Horton v. Orange County Board of Education,* 464 F. 2d 536 (4th Cir. 1972), upon which latter case *Thomas* rested. As we shall hereafter point out, the holding in those cases has been reversed by the Fourth Circuit very recently in the light of a recent decision of the United States Supreme Court.

The scenario opens in the winter of 1974-75 with attempts on the part of supervisory personnel of petitioner, Board of Education of Charles County (the County Board), to bring the teaching performance of Mrs. Crawford up to what might be regarded as an acceptable level. On April 10, 1975, her principal advised the County Board's Director of Administrative Services:

> It is my opinion that Mrs. Margaret Crawford is not doing the job well as a tenured educator. I've had people in to help her, sent her to other schools for observation, made definite recommendations to her and still there is little or no improvement in her teaching of children.

The classroom is a "playhouse" and many parents have asked that their children be assigned another classroom. According to our school records four children have already been hurt in that room, one from a pair of scissors that was thrown across the room.

I am today recommending that this teacher not be reassigned for another year.

This was followed by an evaluation on April 21 by the principal and a specialist in elementary education of the County Board. The principal stated, "Teaching in this classroom has been very poor because of: 1. Inability to manage class; 2. Poor preparation; 3. Attitude of teacher toward pupils and 4. Inability to relate." The specialist said, "Much valuable instructional time is wasted trying to maintain classroom control and discipline." On May 29 the County Board's Director of Administrative Supervisory Services recommended to the Superintendent of Schools of Charles County that Mrs. Crawford "be dismissed on the grounds of incompetency under Section 114, Article 77 of the Public School Laws of Maryland," an action of which he said he informed Mrs. Crawford at a conference held at 12:30 p.m. on that date at the school where she was employed. A copy of this communication was directed to her.

Maryland Code (1957, 1975 Repl. Vol.) Art. 77, § 114 was applicable at the time of the inception of this controversy.[1] Under it "[a]ny county board of education may, on the recommendation of the county superintendent of schools . . . dismiss any teacher . . . for immorality, misconduct in office, insubordination, incompetency, or wilful neglect of duty, provided that the charge or charges be stated, in writing, to such person and that such person be given an opportunity to be heard by the said board of education upon not less than 10 days' notice," with further provision for "an appeal from the board's decision . . . to the State Board of Education."

---

1. Now recodified without substantial change as Code (1978) § 6-202, Education Article.

Mrs. Crawford met with the County Superintendent and others on June 6, 1975, at which time he advised her that he had received a letter from his subordinates recommending her dismissal. This was followed by her meeting on June 9 with the County Board's Director of Personnel who explained to Mrs. Crawford her rights relative to the dismissal action recommended by the County Superintendent. The chairman of the County Board advised her by letter dated June 10 of the recommendation of the Superintendent for her dismissal "because of incompetency, wilful neglect and misconduct," of her right to be heard and that if she desired a hearing on the recommendation she should notify the County Board by letter within 15 days. She did so on June 20.

The County Board was authorized by Art. 77, § 114B to have a hearing examiner. This matter was referred to him. He notified Mrs. Crawford of a hearing to be held on August 14 at 9:30 a.m. The notice was sent to her address as it appeared in the County Board's personnel records. When Mrs. Crawford did not appear at the appointed time the examiner placed a telephone call to her. Ultimately, he reached her at a new number in the State of Virginia. She advised him that she had not received notice of the hearing and requested a new hearing date. As the State Board's hearing examiner put it, the recommendations of the hearing examiner for the County Board to it "make it clear that he did not believe that [Mrs. Crawford] had not received the July 29th letter and therefore recommended that no new hearing date be set and that the [County] Board proceed . . . upon the *ex parte* recommendations of the Superintendent."

Counsel for Mrs. Crawford advised the County Board on September 9 that the letter from its hearing examiner to Mrs. Crawford postmarked July 29 was still in the possession of the United States Postal Service on August 15, as evidenced by its having been stamped by that service in Washington, D. C., on that date. Thus, it appeared that she did not in fact receive the notice of the August 14 hearing. Mrs. Crawford ultimately testified that she did not advise the County Board of her summer mailing address because she had had no difficulty in having mail forwarded to her in Virginia during

previous summers.[2] The County Board denied a request for a new hearing date and then adopted a resolution dismissing Mrs. Crawford. She appealed to the State Board.

At the time here relevant the State Board's powers were set forth in Code (1957, 1975 Repl. Vol.) Art. 77, § 6.[3] They include "explain[ing] the true intent and meaning of the law, and ... decid[ing] all controversies and disputes that arise under it ...." The State Board's hearing examiner determined after a hearing on January 13, 1976, that the County Board "should have scheduled a second hearing" because Mrs. Crawford did not receive the notice of the first hearing before it was held. Thus, he concluded she had been denied the hearing to which she was entitled. In his ultimate recommendations to the State Board, however, he said, "[R]ather than recommend to the State Board of Education that this matter be remanded, and upon the authority of the procedure adopted by the State Board of Education *Guido v. Board,* HE-4-73-AL,[4] and with the assent of the Board, but over the objection of [Mrs. Crawford], a hearing on the merits was held ... on February 27, 1976 following a new written notice to [Mrs. Crawford] setting forth the reasons for the requested dismissal action." The hearing examiner on May 18, 1976, recommended to the State Board that Mrs. Crawford "be discharged from her position as a tenured teacher with

---

2. Mrs. Crawford apparently communicated her new address in Virginia to the payroll department of the County Board to be certain that she received the checks to which she was entitled during the summer months. She seems to have taken no action to communicate a new address for the notice of the hearing. There is no indication the payroll department was placed on notice in any way that the address she communicated should be disseminated elsewhere within the County Board's office.

3. Now found without significant change in Code (1978) § 2-205 (b)-(f), Education Article.

4. In *Guido,* which coincidentally also involved Charles County, a divided State Board said:

> To be consistent with our policy on matters where there is a procedural defect in a hearing by a local board, we hereby state that no useful purpose would be served by returning the case for further proceedings before the same body which committed the original error. (See *Nichols v. Board of Education of Caroline County,* decided March 22, 1972). Therefore, we direct that this case be set before a Hearing Examiner of this Board for a *de novo* proceeding and be heard in accordance with Article 77, Section 114.

the Charles County Board of Education upon the ground of incompetency." The State Board adopted that recommendation on July 28, 1976. The matter of back pay was not discussed in the hearing examiner's recommendations and report to the State Board nor in its opinion and order, although Mrs. Crawford had contended before the hearing examiner that she was entitled to back pay.

Nothing appears in the record by way of correspondence or memoranda in the nine month period between July 28, 1976, and March 30, 1977. Inexplicably, allegedly without any request from any of the parties,[5] the State Board on March 30, 1977, passed the following order:

> [Mrs. Crawford] has now applied for back pay for the period from October 14, 1975 — the date of the original dismissal which we found to be invalid — until July 28, 1976 — the date of our opinion dismissing the petitioner from her position. For the reasons stated below, we conclude that [Mrs. Crawford] should be granted back pay for the period stated.
>
> In general, a public school teacher is entitled to lost earnings as a result of a wrongful dismissal. *Board of Education v. Cearfoss,* 165 Md. 178, 166 A. 732 (1933); *Underwood v. Board of County School Commissioners,* 103 Md. 181, 63 A. 221 (1906).[6] This rule is merely an application of the general rule of liability for expectation damages arising out of a breach of contract.
>
> The question here, however, is whether such liability for lost earnings is applicable in a situation

---

5. Mrs. Crawford's brief in this Court indicates that the March 30 order was entered "without further petition by the parties . . . ." At oral argument Mrs. Crawford's counsel said, "Mrs. Crawford through her counsel did not request the State Board to issue a subsequent decision in this case. There was no contact made asking the State Board to render its decision. I called the [Assistant] Attorney General . . . who serves the State Board and asked him, 'What happened to the back pay issue?' He said, 'Under consideration still.'"

6. In neither *Cearfoss* nor *Underwood* was there a determination that grounds for dismissal existed.

where the teacher is subsequently dismissed for the same reasons which motivated the initial, but (for procedural reasons) invalid discharge.

We believe that [Mrs. Crawford] must be granted such lost earnings. We have concluded that the initial dismissal of [Mrs. Crawford] by the County Board was invalid and therefore a nullity. Accordingly, [Mrs. Crawford] had a contractual right, until our decision of July 28, 1976, to receive earnings as a teacher. The County Board, until such date, breached its contractual obligation and, therefore, should pay the petitioner her salary for the period October 14, 1975 until July 28, 1976. This reasoning has been adopted under similar circumstances by the United States Court of Appeals for the Fourth Circuit, *Thomas v. Ward,* 529 F. 2d 916 (4th Cir. 1975); *Horton v. Orange County Board of Education,* 464 F. 2d 536 (4th Cir. 1972), and we are constrained to follow those conclusions. (*Accord, Wellner v. Minnesota State Junior College Board,* 487 F. 2d 153 (8th Cir. 1973).)

It recognized that her claim for lost earnings "should be reduced by the amount which [she] earned through other employment . . . or the amount which [she] could have earned by the exercise of reasonable diligence ...." It "recommend[ed] that the parties make a reasonable effort to come to an agreement as to the amount of money which would be due [Mrs. Crawford]" and said that if the parties "fail[ed] to agree, a hearing on this issue w[ould] have to be held by the Hearing Examiner."

The County Board promptly appealed to the Circuit Court for Charles County. It affirmed the decision of the State Board. The County Board then appealed to the Court of Special Appeals. We granted the writ of certiorari prior to consideration of the case by that court.

The County Board advances a number of reasons why the action of the State Board in awarding the back pay should be overturned. In the view which we take of this case we need

only consider whether the decision of the State Board that Mrs. Crawford should be dismissed by reason of incompetency has the effect of wiping out any claim she may have for lost pay by virtue of the failure of the County Board to originally accord her a proper hearing on the issue of competency.

K. Davis, *Administrative Law Treatise* § 7.10 (1958) and K. Davis, *Administrative Law Text* § 7.11 (3d ed. 1972) both recognize the proposition that denial of an administrative hearing may be cured by judicial review. The former states at 448, "Many cases uphold administrative action on the ground that opportunity for de novo judicial review supplies administrative procedural deficiencies." Both texts refer to *Hagar v. Reclamation District No. 108,* 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569 (1884), as a "leading . . . case" on the subject. Both texts state, correctly, relative to *Hager*:

> [T]he Court rejected a contention that due process was violated by levying assessments without providing opportunity to be heard; the Court observed that collection could be made only through court proceedings and that the requirements "are all satisfied where a hearing in court is thus allowed." [*Id.* at 448 and 174.]

Other cases cited by Professor Davis in support of this point of view include: *Ewing v. Mytinger & Casselberry,* 339 U. S. 594, 598, 70 S. Ct. 870, 872, 94 L. Ed. 1088 (1950); and *Lichter v. United States,* 334 U. S. 742, 791-92, 68 S. Ct. 1294, 1319, 92 L. Ed. 1694 (1948). The 1972 text adds after the above quotation, "The principle is a fundamental one." Both texts then go on to say:

> The Court stated it in a prominent case: "it is enough that all available defenses may be presented to a competent tribunal before exaction of the tax and before the command of the state to pay it becomes final and irrevocable." [*Id.* at 448 and 174 (footnote omitted).]

In support of the latter proposition both texts cite *Nickey v. Mississippi*, 292 U. S. 393, 396, 54 S. Ct. 743, 744, 78 L. Ed. 1323 (1934). Professor Davis is likewise of the opinion that lack of opportunity to be heard preceding an administrative decision may be remedied by administrative review, citing *Opp Cotton Mills, Inc. v. Administrator*, 312 U. S. 126, 61 S. Ct. 524, 85 L. Ed. 624 (1941), and *Palmer v. McMahon*, 133 U. S. 660, 10 S. Ct. 324, 33 L. Ed. 772 (1890). In *Opp* Chief Justice Stone said for the Court of due process:

> The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective. [*Id.* at 152-53.]

In this case the effective final order came with the State Board's finding, after a full de novo hearing, that Mrs. Crawford was incompetent.

Support for the Davis view is found in *Sherer v. City of Laguna Beach*, 13 Cal. App.2d 396, 57 P. 2d 157 (1936). That case involved a claim for damages caused by establishing the grade on a city street and the lowering of the level of the roadway from three to eight feet in front of property of the plaintiffs. What the court said there relative to due process is of interest here. In response to a contention "that the provisions of the [act in question] must be held unconstitutional and void in so far as they purport to bar damages caused by establishing a grade or making a change of grade because the act provides for nothing more than the making of the protest without any power given to any board or city authority to hear it or fix or award damages," the court said:

> This may be so, but that alone does not deprive the protesting owner of the due process of law or enable the city to take his property for a public use without compensation because if the owner makes his protest he can seek his damages in a court of law.

Due process of law does not entitle a person to have a hearing before any particular board, tribunal or court. It is satisfied if he be given a fair hearing upon reasonable notice before a board, tribunal or court having jurisdiction of the proceedings and the parties. As was said in *Ex parte Wall,* 107 U.S. 265 [, 2 Sup. Ct. 569, 27 L.Ed. 552 (1883),]: "Assessments for damages and benefits occasioned by public improvements are usually made by commissioners in a summary way .... In all cases that kind of procedure is due process of law which is suitable and proper to the nature of the case, and sanctioned by the established customs and usages of the courts. 'Perhaps no definition,' says Judge Cooley, 'is more often quoted than that given by Mr. Webster in the Dartmouth College case: "By the law of the land is most clearly intended the general law — a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society." ' (Cooley, Const. Lim. 353.) The question, what constitutes due process of law within the meaning of the Constitution, was much considered in this court in the case of *Davidson v. New Orleans,* 96 U.S. 97 [, 24 L. Ed. 616, (1878)]; and Mr. Justice Miller, speaking for the court said: 'It is not possible to hold that a party has, without due process of law, been deprived of his property, when, as regards the issues affecting it, he has by the laws of the state a fair trial in a court of justice, according to the modes of proceeding applicable to such a case.' " (See, also, *City of Seattle v. Kelleher,* 195 U. S. 351 [, 25 S. Ct. 44, 49 L. Ed. 232 (1904)].) [*Id.* at 402-03.]

Of particular interest here is *Ferguson v. Thomas,* 430 F. 2d 852 (5th Cir. 1970), cited by Professor Davis in his 1972 work. It is factually analogous to the case at bar. Dr. Ferguson was a college instructor. He brought an action

alleging, among other things, according to the court, "that the procedures followed in effectuating his termination denied him due process of law." The court said:

> [The college] may thus have failed to accord Dr. Ferguson a meaningful opportunity to present his defenses to the charges against him, to which we hold him entitled. However, we do not need to reach this issue in this case for the reason hereinafter set out. [*Id.* at 858.]

It then went on to say:

> Since the very witnesses Dr. Ferguson wanted to present have now testified and it is clear from their testimony that they would have greatly enhanced the basis of the Board's action in affirming his termination, it is not necessary for this cause to be remanded to the district court for referral back to the school board. Justice and fairness to all parties indicates that his termination may be affirmed here and now. *Compare* Stevenson v. Board of Education of Wheeler County, 426 F. 2d 1154 [, 1157] (5th Cir. 1970). [*Id.* at 858.]

*Cf.* Pinsker v. Pacific Coast Society of Orthodontists, 12 Cal. 3d 541, 552, 557, 116 Cal. Rptr. 245, 256-57, 526 P. 2d 253, 264-65 (1974).

*Snider v. Kit Carson Sch. Dist.,* 166 Colo. 180, 442 P. 2d 429 (1968), is of interest here. In it a teacher sought actual and exemplary damages for breach of contract. The court noted at 187, as in the case at bar, "[N]o challenge was made to the ultimate finding of the board that good cause for dismissal did in fact exist." It said in denying the claim:

> Before proceeding to the central issue in the case, it might serve to place the entire matter in better focus to note that plaintiff does not contend that there was insufficient evidence to support the detailed findings of the board made on February 29, 1964, nor is there any suggestion that good cause for her dismissal was not established at the hearing.

Rather, plaintiff's *sole* position is that the contract was breached on January 24, 1964, that the rights of the parties were fixed in concrete as of that date, and that the subsequent hearing before the board did not in any manner cure or remedy the situation. We disagree and hold that under the circumstances of the present case plaintiff's dismissal was a lawful one.

In 78 C.J.S. [, *Schools and School Districts,* § 204 (1952) at] 1098, the general rule on the particular matter with which we are here concerned is said to be as follows:

"A school board may reconsider its action in dismissing a teacher; and, if the original proceedings were void for failure to give the teacher the requisite notice and hearing, the board may treat them as a nullity, and discharge the teacher after notice and hearing properly held."

In support of the foregoing proposition see *Alexander v. Manton Joint Union School District,* 73 Cal. App. 252, 238 P. 742 [(1925)], where it was held that school trustees could treat as a nullity their attempted dismissal of a teacher where no charges had been preferred, no notice given, and no hearing held, and that the trustees could thereafter hold a hearing upon notice and lawfully discharge the teacher, if good cause for such discharge was then shown. See also *White v. Wohlenberg,* 113 Iowa 236, 84 N.W. 1026 [(1901)]. [*Id.* at 185 (emphasis in original).]

Because the State Board's hearing in this matter was, in the words of its order in its case of *Guido v. Board,* "heard in accordance with Article 77, Section 114" and thus is as though the County Board had reheard the matter, it follows that this case is factually analogous to *Snider.*

It will be recalled that the State Board in its opinion relied in particular upon *Thomas v. Ward,* 529 F. 2d 916 (4th Cir. 1975), and *Horton v. Orange County Board of Education,* 464

F. 2d 536 (1972). *Ward* was based upon *Horton* and *Burt v. Board of Trustees,* 521 F. 2d 1201 (4th Cir. 1975) (*Burt I*). More recently, in *Burt v. Abel,* 585 F. 2d 613 (4th Cir. 1978) (*Burt II*), the Fourth Circuit said:

> In *Horton v. Orange County Board of Education,* 464 F. 2d 536 (4 Cir. 1972), we held that, where an employee is dismissed without being accorded procedural due process but where the dismissal is subsequently determined by a court to have been for just cause, the employee is not entitled to actual reinstatement but may recover an award of back pay for that period between the date of discharge and the date of the subsequent court decision. Constructive reinstatement for that period during which the dismissal was unlawful was deemed by us to be the appropriate remedy for constitutional defects in the discharge procedure. This was the relief granted Mrs. Burt by the district court in *Burt I. [Id.* at 615 (footnote omitted).]

The court then went on to note that in *Carey v. Piphus,* 435 U. S. 247, 98 S. Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court in n. 15 "disapproved [the Fourth Circuit's] decision in *Horton"* adding, "While *Carey* dealt specifically with procedural defects in the context of school suspensions, we think that its reasoning applies whenever the only constitutional deprivation suffered is procedural in nature." *Id.* at 615-16. The actions in *Burt I* and *II* and *Carey* were under 42 U.S.C. § 1983. The court said in *Burt II*:

> *Carey,* we believe, requires that we vacate the district court's award and remand the case to allow plaintiff to plead and prove any *actual* injury suffered by Mrs. Burt as a result of defendant's alleged failure to provide adequate pretermination notice and hearing. Because it is settled that Mrs. Burt's discharge was for just cause, plaintiff shall not be allowed to allege lost pay or lost retirement-fund contributions as damages at-

tributable to the procedural deprivation. [*Id.* at 616 (footnote omitted) (emphasis in original).]

In *Carey* Mr. Justice Powell said for the Court:

In this case, the Court of Appeals held that if petitioners can prove on remand that "[respondents] would have been suspended even if a proper hearing had been held," 545 F. 2d, at 32, then respondents will not be entitled to recover damages to compensate them for injuries caused by the suspensions. The court thought that in such a case, the failure to accord procedural due process could not properly be viewed as the cause of the suspensions. *Ibid.;* cf. *Mt. Healthy City Board of Ed. v. Doyle,* 429 U. S. 274, 285-287 (1977); *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U. S. 252, 270-271, n. 21 (1977). The court suggested that in such circumstances, an award of damages for injuries caused by the suspensions would constitute a windfall, rather than compensation, to respondents. 545 F. 2d, at 32, citing *Hostrop v. Board of Junior College Dist. No. 515,* 523 F. 2d at 579; cf. *Mt. Healthy City Board of Ed. v. Doyle, supra,* at 285-286. We do not understand the parties to disagree with this conclusion. Nor do we.[15] [*Id.* at 260.]

\* \* \*

**15.** A few courts appear to have taken a contrary view in cases where public employees holding property interests in their jobs were discharged with cause but without procedural due process. *E. g., Thomas v. Ward,* 529 F. 2d 916, 920 (CA4 1975); . . . *Horton v. Orange County Bd. of Ed.,* 464 F. 2d 536, 537-538 (CA4 1972). See also *Burt v. Bd. of Trustees of Edgefield County School Dist.,* 521 F. 2d 1201, 1207-1208 (CA4 1975) (opinion of Winter, J.). [*Id.* at 260.]

We find the reasoning in *Carey, Burt II, Ferguson,* and *Snider* to be applicable here. It is important to note that the State Board's determination was two-fold: 1. That the County Board adopted improper procedures in dismissing Mrs. Crawford. 2. That there was just cause to dismiss Mrs. Crawford. We hold that the subsequent de novo administrative hearing held by the State Board cured the due process defects in the County Board's hearing.

The State Board in its order put Mrs. Crawford's claim for back wages in terms of a breach of contract. Implicit in any employment contract is an implied promise on the part of an employee to perform his duties in a workmanlike manner. In the case of a teacher this must mean in accordance with established professional standards. When the State Board found that Mrs. Crawford was incompetent as a teacher it found in essence that she had breached her contract of employment. She rendered no service of any kind, nature or description to her employer, the County Board, during the period for which she seeks payment of salary. To award her pay for the period in question in that circumstance because of the initial failure of due process "would constitute a windfall, rather than compensation, to [her]." Paraphrasing the Supreme Court's statement in *Carey,* the failure to accord procedural due process cannot properly be viewed as the cause of Mrs. Crawford's dismissal. The County Board did not breach its contract with Mrs. Crawford but she breached her contract with the County Board by her incompetency. It thus follows that she is not entitled to pay for a period when she performed no services. Hence, we hold the State Board erred as a matter of law in awarding her such pay.

> *Judgment reversed and case remanded for passage of an order consistent with this opinion; appellee to pay the costs.*