John H. ROBBINS, Petitioner,

v.

UNITED STATES RAILROAD RETIRE-
MENT BOARD, Respondent.

No. 76–4274.

United States Court of Appeals,
Fifth Circuit.

May 4, 1979.

Robert A. Kofkoff, Arthur Leed, Hugh F. O'Donnell, Decatur, Ga., for petitioner.

Richard Butler, Secretary, U.S. Railroad Retirement Board, Dale G. Zimmerman, Gen. Counsel, Steven A. Bartholow, Edward S. Hintzke, Attys., Chicago, Ill., for respondent.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

(Opinion 12–22–78, 5th Cir., 1978, 586 F.2d 1034).

Before JONES, GODBOLD and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

In our original panel opinion, 586 F.2d 1034 (CA5, 1978), we held that Robbins was entitled to a pretermination due process hearing, that he had not received such a hearing, and that benefits must be paid to him from the date they were cut off until it is determined, if so determined, after a proper hearing that he is not entitled to benefits. On reconsideration we conclude that we were wrong in requiring a pretermination hearing and ordering continuation of benefits.

■■■ It is well established that the due process clause prohibits the government from depriving its citizens of property without providing hearings "at a meaningful time." *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, 570 (1972). In some contexts the meaningful time must be before a deprivation takes place. This was true of the summary pre-judgment seizures struck down in *Fuentes*. Similarly, in *Goldberg v. Kelly*, 397 U.S.

254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), it was held that welfare payments may not be terminated without first affording the claimant a hearing. Although *Goldberg* involved a statutory entitlement such as the one at hand the Supreme Court has subsequently indicated that its rationale will be followed only in some situations. In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court declined to apply *Goldberg* to claims of Social Security disability benefits. The Court characterized *Goldberg* as having been based on the dire need of welfare recipients and held that since disability benefits are not based on need, and since the beneficiaries might have other means of subsistence, there was no right to pretermination hearings. 424 U.S. at 340–41, 96 S.Ct. at 905–906, 47 L.Ed.2d at 36–37. Even if *Mathews* and *Goldberg* were the only controlling precedents, we would be inclined to follow *Mathews* since it is unlikely that railroad unemployment beneficiaries are any needier than disability beneficiaries.[1] But the same conclusion is also dictated by the Supreme Court's summary affirmance of *Graves v. Meystrik*, 425 F.Supp. 40 (E.D.Mo.), aff'd 431 U.S. 910, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977). There it was held that the due process clause did not require Missouri to afford pretermination hearings to unemployment benefit claimants. Although *Graves* involves a state program, in its essential elements it is indistinguishable from the present case, and we feel obliged to follow it.

This is not, however, the end of our discussion but only the beginning. For while we find that the petitioner had no right to a pretermination hearing, he did have a right to a fair hearing on eligibility at some point. We find that he was denied such a hearing and remand to the Board so that he can be afforded one.

First we look at the Board's argument that petitioner had no property interest in the benefit payments. This is so, the Board asserts, because there was no "termination"

1. *See* 424 U.S. at 342, n.26, 96 S.Ct. at 906, n.26, 47 L.Ed.2d at 37, n.26.

at all. The Board paid petitioner benefits for two registration periods on the basis of his claim of entitlement, before any determination of eligibility. This practice, sanctioned by 45 U.S.C. § 362(i), allows the Board to provide funds quickly after layoff, when help may be most needed. In its petition for rehearing the Board asserts that if these initial payments convert an unproven claim into a property right that cannot be divested without due process, the Board's practice will have to be stopped. We could not impose upon the Board the requirements of due process unless some property or liberty interest is involved. The existence of such interests is determined by seeing whether the substantive law on which they are arguably based (in this case the Railroad Unemployment Insurance Act, 45 U.S.C. § 351 *et seq.*) gives rise to a "legitimate claim of entitlement." *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 11, 98 S.Ct. 1554, 1561, 56 L.Ed.2d 30, 40 (1978). *Compare Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). *See also Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Powell, J., concurring); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Goldberg v. Kelly, supra.* We need not decide whether the Railroad Unemployment Insurance Act, even before any payments are made, gives a claimant a property interest that will trigger the requirements of due process, for our decision that petitioner's hearing was inadequate is ultimately based not on the due process clause but on the Act itself. For the reasons detailed below we conclude that petitioner was not given the "fair hearing" required by 45 U.S.C. § 355(c). Thus the Board's concern about having to

terminate the practice of granting initial benefits before eligibility is determined is removed from this case because our decision is not based on the existence of that practice.

We turn now to the procedures used by the Board in this case. Board regulations provide that after an initial ruling on eligibility by a District Office a claimant found ineligible may seek a hearing before an appeals referee. 20 C.F.R. §§ 320.5–320.32.[2] In setting out procedures for the hearing the regulations further authorize the appeals referee to obtain evidence on his own:

> If, in the judgment of the referee, evidence not offered is available and relevant, and is material to the merits of the appeal, the referee shall obtain such evidence upon his own initiative.

20 C.F.R. § 320.25(b).

The referee in this case made use of this authority. The day after the parties appeared before him he called the Board's Atlanta office and requested a wide variety of information. Some of the requests were for documents such as time records of Southern Railway, company rules, and the company's collective bargaining agreement. Other requests engendered telephone inquiries from the District Office to company and union officials, the results of which were passed along to the referee. More such requests were made in the following weeks. All of this took place without giving notice to the petitioner of what information was being gathered[3] or affording him any opportunity to rebut any of it that might be adverse. Much of the information was damaging and was evidently relied upon by the referee and by the Board in its review of his decision.[4] Thus, while the

---

**2.** Petitioner first sought review by the Regional Director pursuant to 20 C.F.R. § 320.10, in which the initial determination was affirmed. This review involved no hearing, however, and is not a prerequisite to a hearing before an appeals referee. 20 C.F.R. § 320.12.

**3.** The only indication of this process given to petitioner before the referee's decision was the referee's March 25, 1975 letter to petitioner's attorney, advising him that a decision would be forthcoming "[a]s soon as our Atlanta office

furnishes certain information I have requested."

**4.** Two items appear to have been especially important. First, the railroad submitted its daily work records, or "off-board lists". Handwritten abbreviated entries on these sheets indicated that petitioner was off for personal reasons. No effort was made to identify who made these entries or to contact that person for verification. The decisions of the referee (p. 9) and the Board (pp. 3–4) indicate reliance on

hearing itself may have comported with due process, it is clear that the Board's decision was not based solely on the hearing.

■ The Board argues that the referee acted in accord with the Board's regulations, particularly 20 C.F.R. § 320.25(b). Assuming this to be so, we must still determine whether the regulation as applied is consistent with the Act's guarantee of a "fair hearing" to claimants such as the petitioner. 45 U.S.C. § 355(c). The Board is entitled, as is any federal agency, to a substantial degree of judicial deference in the interpretation of the statute under which it operates. *Railroad Retirement Board v. Duquesne Warehouse Co.*, 80 U.S.App.D.C. 119, 149 F.2d 507, 510 (CADC, 1945), *aff'd*, 326 U.S. 446, 66 S.Ct. 238, 90 L.Ed. 192 (1946). But such deference need not be extended to an interpretation that eviscerates the statutory language and raises serious constitutional problems.

■ We conclude that the Board's procedures, which do not give the claimant an opportunity to know what evidence is to be used against him and to rebut it if he can, do not afford the "fair hearing" guaranteed by the Act. Although the statutory phrase "fair hearing" is not explicit in its requirements, our reading of it is informed by decisions in other contexts applying traditional notions of fairness and due process. In *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), the government revoked the security clearance of an aeronautical engineer, acting largely on information given by acquaintances to FBI investigators. Although the petitioner was informed generally of the substance of the information,[5] he was not told who the informants were or exactly what they had said.

The Supreme Court invalidated the administrative procedure used, holding that:

> [W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.

360 U.S. at 496, 79 S.Ct. at 1413, 3 L.Ed.2d at 1390–91. The Court recognized that this principle is similar to that of the confrontation clause of the Sixth Amendment and that it is also an element of due process in administrative proceedings, 360 U.S. at 496–97, 79 S.Ct. at 1413, 3 L.Ed.2d at 1391. Another analogous case is *Ohio Bell Telephone Co. v. Public Utilities Comm'n*, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). As part of the Commission's rate proceeding the company adduced evidence of the value of its assets as of a certain date. The Commission, without prior notice, used statistics on price levels to calculate the valuation for subsequent years. The Supreme Court held that even this sort of data was subject to rebuttal and that without an opportunity for rebuttal the company was deprived of "the fair hearing essential to due process." 301 U.S. at 300, 57 S.Ct. at 729, 81 L.Ed. at 1099. This principle was more recently adverted to in *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 288 n.4, 95 S.Ct. 438, 443 n.4, 42 L.Ed.2d 447, 457 n.4 (1974).

■ The requirements of due process are not fixed and must vary with the circumstances. *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 162, 95 L.Ed. 817, 849 (1951) (Frankfurter, J., concurring); *Fuentes v. Shevin, supra*, 407 U.S. at 82, 92 S.Ct. at 1995, 32

---

this information. Second is the "testimony" of George Carmichael, a Southern Railway supervisor, that petitioner had left work because he "did not feel like working." This statement, made orally to the District Office and relayed to the referee, is also cited by him (p. 9) and by the Board (p. 2). Reliance on Carmichael's statement seems all the more questionable in view of his unwillingness to sign a statement.

5. "Petitioner was . . . advised that the revocation of his security clearance was based on incidents occurring between 1942 and 1947, including his associations with alleged Communists, his visits with officials of the Russian Embassy, and the presence in his house of Communist literature." 360 U.S. at 486, 79 S.Ct. at 1408, 3 L.Ed.2d at 1385.

L.Ed.2d at 571. In determining what process is due in a particular situation we consider the relative weights of the public and private interests involved. *Id.; Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971); *Arnett v. Kennedy, supra,* 416 U.S. at 167–68, 94 S.Ct. at 1650–1651, 40 L.Ed.2d at 41 (Powell, J., concurring). The principle that a due process hearing includes the right to know what evidence is being used against one and the opportunity to rebut it, has been termed "relatively immutable." *Greene, supra,* 360 U.S. at 496, 79 S.Ct. at 1413, 3 L.Ed.2d at 1390. The few contexts in which this principle is not applied involve critical governmental interests such as the maintenance of prison discipline,[6] national security,[7] and the protection of confidential informants.[8] No such critical governmental interest is involved in this case. While considerations of convenience, efficiency and administrative cost are appropriate in determining what kind of hearing is necessary, *Mathews v. Eldridge, supra,* 424 U.S. at 347, 96 S.Ct. at 908, 47 L.Ed.2d at 40, here there is no

indication that they require the Board, in carrying out its "fair hearing" obligation, to dispense with this traditional element of a due process hearing. *See Ohio. Bell Telephone Co. v. Public Utilities Comm'n, supra,* 301 U.S. at 305, 57 S.Ct. at 730, 81 L.Ed. at 1102.

It is established that administrative procedures that at best skirt the edge of due process will not be approved unless explicitly authorized. *Greene v. McElroy, supra,* 360 U.S. at 507–08, 79 S.Ct. at 1419–1420, 3 L.Ed.2d at 1397; *Hannah v. Larche,* 363 U.S. 420, 430, 80 S.Ct. 1502, 1508, 4 L.Ed.2d 1307, 1315 (1960). This principle is based on the "concern that traditional forms of fair procedure not be restricted by implication or without the most explicit action by the Nation's lawmakers, even in areas where it is possible that the Constitution presents no inhibition." *Greene, supra.* The Board's procedure in this case does substantial violence to a traditional, "relatively immutable" element of a due process hearing. Because it lacked this element, the hearing afforded the petitioner was not the "fair

---

**6.** A substantial recent line of cases involving an exception to the principle follows from *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). There it was noted that "confrontation and cross-examination of those furnishing information against [one] . . . are not rights universally applicable to all hearings", 418 U.S. at 567, 94 S.Ct. at 2980, 41 L.Ed.2d at 957, and held that prison disciplinary proceedings need not provide these rights, because to do so would entail "considerable potential for havoc inside the prison walls." *Id. Wolff* has been extended to parole cases. *Inmates of Nebraska Penal and Correctional Complex v. Greenholtz,* 576 F.2d 1274, 1284 (CA8), *cert. denied,* —— U.S. ——, 99 S.Ct. 132, 58 L.Ed.2d 140 (1978); *Robinson v. Benson,* 570 F.2d 920, 923 (CA10, 1978), but in such cases there must be a specific finding of good cause for not allowing the confrontation and cross-examination. *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484, 499 (1972). *Wolff* has not undermined the general principle, however, and has been held inapplicable in other contexts, such as proceedings to dismiss public employees, *Thomas v. Ward,* 529 F.2d 916, 919 (CA4, 1975), and involuntary commitment to mental health institutions. (*Suzuki v. Quisenberry,* 411 F.Supp. 1113, 1130 (D.Haw.1976).

**7.** *Greene* itself makes clear that even where national security is involved there will normally be a right to meet adverse evidence. National security has outweighed this due process interest when prejudice to individuals is minimal, *U. S. v. Reynolds,* 345 U.S. 1, 11, 73 S.Ct. 528, 97 L.Ed. 727, 735 (1953) (classified military information not discoverable in tort action where other evidence is available), and when the need for expeditious government action is great, *U. S. v. Nugent,* 346 U.S. 1, 9–10, 73 S.Ct. 991, 996–997, 97 L.Ed. 1417, 1424–25 (1953) (Selective Service deferment proceedings).

**8.** F.R.Crim.P. 32(c) provides that where disclosure to a convicted criminal defendant of information contained in a presentence report would breach a promise of confidentiality or otherwise harm the informant or others, that disclosure need not be made. The rule has withstood challenge based on the confrontation clause, *U. S. v. Fatico,* 579 F.2d 707 (CA2, 1978). However, the rule also requires the district court to provide a summary of any undisclosed information relied on. We have held that such summaries are constitutionally required and should be as detailed as possible. *U. S. v. Woody,* 567 F.2d 1353, 1361–62 (CA5), *cert. denied,* 436 U.S. 908, 98 S.Ct. 2241, 56 L.Ed.2d 406 (1978).

hearing" guaranteed by the Act. 45 U.S.C. § 355(c).[9]

Our opinion does not mandate turning the appeals referee's hearing into a full trial-type hearing. Informality may be beneficial for all, and the rules of evidence used in courts of law do not apply. 45 U.S.C. § 355(e). What is required is that a claimant have advance notice of adverse evidence that will be used in rejecting his claim so that he will be able to rebut it at the hearing.

Because we must remand the case for a new hearing in accordance with this opinion, we do not reach the petitioner's claim that the Board's decision was not supported by substantial evidence.

The prior opinion of the court is withdrawn and this opinion is substituted. The petition for rehearing is DENIED in all other respects. The order of the Board is VACATED and the cause REMANDED for further proceedings. No member of this panel nor judge in regular active service on the court having requested that the court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 16) the petition for rehearing en banc is DENIED.

JONES, Circuit Judge, dissenting:

I adhere to the conclusions and determination which the Court previously made.

---

**9.** The Board argues that any infirmity in the hearing process was cured by Board review of the referee's decision. The Board may, in its discretion, allow submission of additional evidence at this stage. 20 C.F.R. § 320.40. But such review is not part of the "fair hearing" required by the statute to be conducted "before a referee or such other reviewing body as the Board may establish."